## HORNE v. McRAE.

1. ESTOPPEL.—The contract set up is not a bar to this action.
2. IBID.—CONTRACTS.—An executory contract not performed, between the heirs at law of a decedent and his creditor as to a debt, is not a bar to an action by the creditor against the administrator on the debt.
3. EVIDENCE—TRANSACTIONS WITH DECEDENT—HUSBAND AND WIFE. The wife may testify as to the *value* of the joint services of herself and husband to a decedent, under contract between the husband and decedent.
4. EVIDENCE.—The value of an estate is a material element in an action against the administrator for personal attention to the deceased, and for looking after his business.
5. IBID.—A PHYSICIAN may testify as to the value of services rendered by the wife and husband to a decedent, under contract between the latter and the husband.
6. IBID.—In an action for personal attention to an aged person, testimony as to what one witness offered to do the work for is irrelevant.
7. CHARGE.—It is not error to instruct the jury that a request to charge contains sound propositions of law, but they are not applicable to the case at bar.

8. Ibid.—Judge cannot instruct jury as to what is or what is not in evidence.

9. Executors and Administrators.—The creditor suing here held to be a resident of the State of the ancillary administrator.

Before Townsend, J., Chesterfield, December, 1897.　Affirmed.

Action by Joel M. Horne *v.* James A. McRae, as administrator of Thos. S. Myers, for personal attention to deceased. Judgment for plaintiff, defendant appeals.

*Messrs. Stevenson & Matheson,* for appellant, cite: *Nonsuit should have been granted:* 29 S. C., 100; 23 S. C., 289. *New agreement was settlement of old claim:* 1 McC. Ch., 455; 48 S. C., 470; 21 S. C., 239; 2 Rich., 606; 2 McM., 348; 21 S. C., 142; 42 S. C., 181; 22 S. C., 290. *Rules governing rescission of contract applied here:* 37 S. C., 9; 49 S. C., 277; 44 S. C., 34; 35 S. C., 354; 4 Rich. Eq., 349. *Plaintiff could not sue ancillary administrator:* 3 Strob. Eq., 164; 83 N. C., 156; 8 N. C., 412; 13 S. C., 419; Rev. Stat., 2165; 36 S. C., 303; 22 S. C., 523. *Judge should not have submitted to jury whether paper was in evidence:* 47 S. C., 517; 49 S. C., 294; 24 How., 224.

*Mr. E. J. Kennedy,* also for appellant, cites: *The written contract is bar to this action:* 2 McM., 349; 2 Rich., 608; 4 Rich., 59; 17 S. C., 403; 3 S. C., 109; 5 Rich. Eq., 166; 21 S. C., 142; 42 S. C., 181; 2 McC. Ch., 15; 1 Sand., 50; 5 Wood, 85; 6 Cow., 297; 6 Mass., 321; 127 Mass., 386; 14 Wend., 116; 23 Ver., 437; 22 Ver., 437; 26 Me., 475. *Contract cannot be rescinded unless plaintiff return amount paid on it:* 2 Rich., 45; 37 S. C., 8. *In North Carolina, collateral heirs of a bastard inherit:* 8 N. C., 412; 83 N. C., 156. *Plaintiff is estopped from repudiating contract:* 6 S. C., 485; 35 S. C., 360; 38 S. C., 192; 40 S. C., 101; 26 S. C., 48. *Judge should not have taken from jury the intent of contracting parties:* 17 S. C., 478. *Rules of construction of contracts:* 3 Esp., 163. *Nonsuit should have been granted:* 2 Hill, 225. *Creditors of domicil cannot sue ancillary administrators here:*

34 Ark., 117; 14 How., 400; 13 S. C., 419; 2 Bail., 437; 20 S. C., 108; 25 S. C., 1. *Judge must say if writing is in evidence, and construe it:* 24 How., 224; 7 Meto, 384; 5 DeG. M. & G., 278; 106 Mass., 214; 1 P. & W., 303; 24 Penn. St., 435; 3 S. C., 253; 15 S. C., 302, 32; 17 S. C., 480; 19 S. C., 124; 22 S. C., 288.

*Mr. Edward McIver,* contra, cites: *Contract between other parties not a bar to this action:* 21 Cal., 47; 3 C. B., 157. *Physician may testify as to value of services:* 19 S. C., 66; 47 S. C., 40. *Judge cannot instruct jury as to what is in evidence:* 47 S. C., 522; 49 S. C., 299, 558.

*Mr. W. S. Blakeney,* also contra, cites: *Judge shall only charge the law applicable to the case:* 49 S. C., 303; 47 S. C., 521. *Statutes of distribution in one State cannot legitamatize a person in another:* 23 Miss., 167; 2 McC. Eq., 354; 70 Ga., 528; 5 Johns., 239; 6 N. H., 150; 27 Ia., 281; 8 Pet., 361. *Contracts must be construed by the words:* 19 S. C., 450. *This contract void here:* 1 Rich., 36; 1 McC., 449; 2 Hill, 528. *Inapplicable exceptions properly refused:* 50 S. C., 374. *Specific request may be covered in general charge:* 48 S. C., 231; 45 S. C., 156; 49 S. C., 304. *Judge cannot instruct jury what is in evidence:* 47 S. C., 522. *In absence of request, failure to charge specific proposition not error:* 50 S. C., 374. *Cannot charge in respect to matter of fact:* 49 S. C., 559; 47 S. C., 58. *Incompetent testimony received without objection, not reversible error:* 20 S. C., 343; 22 S. C., 46. *Opinion as to value of services admissible:* 47 S. C., 51. *Relevancy is matter of discretion:* 11 S. C., 134.

July 26, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The plaintiff brought this action to recover the value of services rendered by and through him to defendant's intestate for a period of nearly three years—from December, 1891, up to the time of his death, in November, 1894—under an agreement with intestate, in which no particular price was stipulated for, but simply

that he should be paid well for his services. The action was, therefore, based upon a *quantum meruit:* the plaintiff alleging that his services for the time above stated were reasonably worth the sum of $3,000, of which the sum of $416 has been paid, and judgment for the balance is demanded.

The defendant, in his answer, sets up five separate defenses: 1st. That the services were rendered under a special contract that plaintiff was to be paid $7 per month, and allowed board for himself and family, by the intestate, which contract, defendant alleges, has been fully performed by said intestate. 2d. Defendant denies that the services rendered by plaintiff were worth anything like the sum claimed in the complaint, and he alleges that the services sued for have been fully paid for and discharged. 3d. The third defense is stated in the following language: "That he is informed and believes that immediately after the death of said Myers, said Horne began to make exorbitant demands on the heirs at law of said Myers, and claim heavy accounts for services rendered, and threaten litigation; and the said heirs at law, being unable to ascertain then the conditions on which plaintiff was employed and the condition of the estate, and being frightened at the threat of litigation, entered into an agreement with said Horne and his wife, a copy of which is hereto attached, marked 'Exhibit A,' and he agreed to receive the share provided for them in full settlement of all claims, and he has received under said agreement $416 from defendant, who, although no party to said agreement, under advice, recognized and acted under it, the heirs at law being all *sui juris*, and parties to the same, although the provision in the same was largely more than could possibly have been due said plaintiff, and was obtained by his threat of litigation, and the timidity of the heirs at law. Said plaintiff is also in possession of a valuable tract of real estate under said agreement, and is not entitled to anything, except what he may get thereunder, until said agreement is fully rescinded and he return to the

defendant the money he has received thereunder, and then he is entitled to nothing, as defendant is informed and believes, as he was fully paid in the lifetime of Thomas S. Myers." 4th. The fourth defense stated in the answer is nothing more than a repetition, in different phraseology, of the first defense stated above. 5th. For a fifth defense the defendant pleads *plene administravit praeter* the sum of $278.39, which he alleges will not be more than sufficient to pay the costs and expenses of defending this case and other threatened suits and claims. A copy of the paper referred to as "Exhibit A" in the third defense above stated, as set out in the "Case," reads as follows: "North Carolina, Anson County. Articles of agreement made and entered into between Joel M. Horne and Sophia E. Horne, of the first part, and State of North Carolina, Anson County, and Samuel M. Carter, of the State of Georgia," with numerous others, stated by name, "of the second part, all of which (?) (whom) are heirs of the estate of Thomas S. Myers, deceased. We, the heirs of Thomas S. Myers, deceased, of the second part, mutually agree and covenant to allow Joel M. Horne and his wife, Sophia E. Horne, of the first part, one-fifth of the estate of the said Thomas S. Myers, deceased, both real and personal, after showing up the contents of such estate, and the said Joel M. Horne and Sophia E. Horne, of the first (part?), relinquished all their claim to all the rest of the estate of the said T. S. Myers to the heirs of the heirs of the second part. Whereunto we set our hands and seals, and we all, of the first part and second part, in consideration of $1 received by each of us from the other, agree to carry out in good faith the foregoing and above contract." To which is appended the signatures and seals of all of the parties named in the body of the paper, except that no seals are appended to the names of Betsy A. Ruppell and Andrew Mills, the last two who signed. This paper is without date, though the dates of the certificates of acknowledgment, appended thereto, show that it must have been executed on or before the 12th day of December, 1894. The

paper appears to have been executed in the presence of J. A. McRae, the defendant in this action, as his name appears as a subscribing witness thereto. There is also the following certificate appended: "North Carolina, Anson County. Superior Court. Office of clerk. I, John E. McLaughlin, clerk of the superior court for the county of Anson aforesaid, hereby certify that the foregoing is a full and true copy filed in a special proceeding pending in said Court for partition of the lands of Thomas S. Myers, deceased, among his heirs at law." Duly signed under his official seal, 12th of December, 1896. Then follows an agreement signed by attorneys for plaintiff as follows: "If the above agreement is held to be competent evidence, the copy hereto attached may be used as the original without proof of execution." At the close of the testimony for plaintiff, defendant moved for a nonsuit, which was refused, when the defendant offered his testimony, and the plaintiff offered testimony in reply. Thereupon, after argument of counsel, the Circuit Judge charged the jury, as is set out in the "Case," and a verdict was found for the plaintiff for the sum of $1,500, subject to the plea of *plene administravit*. Judgment having been entered thereon, defendant appeals, upon very numerous exceptions, fifty-two in number. It would be an unpardonable waste of time to undertake to consider these exceptions *seriatim*, as many of them are but repetitions of the same proposition in different phraseology, while some of them are confessedly unfounded, and others are manifestly taken under a misconception of the Judge's charge. We propose, therefore, to consider what we understand to be the questions intended to be made by the exceptions. Before doing so, however, it will be well to state what we consider to be the undisputed facts in the case, and what issues made by the pleadings are eliminated by the verdict of the jury.

It seems that the intestate, Thomas S. Myers, who lived in the State of North Carolina, not far from the line dividing that State from South Carolina, had, in the course of his life, accumulated a considerable estate, estimated to be

worth about $20,000, consisting of both real and personal property, the larger part of the latter being in North Carolina, while he owned considerable real property in both States.　In the latter part of his life, having become much enfeebled by disease, he needed the assistance of some one to look after his business, and to take care of himself personally.　He made repeated attempts to induce the plaintiff, who then resided in South Carolina, to come with his family to his own house, take charge of his business, and provide for his personal wants, offering to pay him well for his services, but not fixing any stipulated amount.　The plaintiff, at first, declined to go, but afterwards was induced to do so, and moved with his family to the house of intestate, for the purpose of taking charge of the business of intestate, and taking care of him personally as long as he lived.　The services required of plaintiff in taking care of the intestate were of the most exacting, onerous, and disagreeable character, as the intestate was afflicted with a disease by which he lost all control of his bowels, and required constant attention, both night and day, to keep him in a comparatively decent condition; and towards the last his mind failed.　The testimony seems to be undisputed that the plaintiff, with those whom he employed to assist him, rendered faithful services to the intestate, from the time he went there, in December, 1891, up to the 17th of November, 1894, when he died.　The intestate being an illegitimate, and never having had either wife or child, under the law of this State, died without heirs, and his property, in this State, became liable to escheat, and was, in fact, escheated.　Testimony was, however, introduced to show that, under the statute law of North Carolina, the half brothers and sisters of the intestate, and the children of his deceased half brothers and sisters, were entitled to inherit his property in that State; and this testimony does not seem to be disputed.　Amongst those so entitled to inherit under the North Carolina law, is the plaintiff's wife, Mrs. S. E. Horne.　Inasmuch as the jury were explicitly instructed

that if they believed from the testimony that the plaintiff
had agreed to serve the intestate for the board of himself
and family and $7 per month, then this action could not
be maintained, it is manifest that the first and fourth de-
fenses, in view of the verdict, must be regarded as elimi-
nated from the case. So, also, as to the second defense,
which only raises an issue as to the value of plaintiff's ser-
vices, and the allegation that they have been fully paid for
and discharged, is disposed of by the verdict. And as the
fifth defense is provided for in the verdict, which was ren-
dered subject to the plea of *plene administravit*, the only
remaining issue that remains to be considered is that raised
by the third defense.

As we understand it, that defense rests upon the ground
that the claim of the plaintiff against the estate of the in-
testate, Thomas S. Myers, has been released by the agree-
ment amongst his heirs, referred to above as "Exhibit A,"
to the answer. We do not see how it is possible to put any
such construction upon the terms of that paper. It does
not purport to release any claim which the plaintiff
had *against* the estate of the intestate. On the con-
trary, it only purports to be an agreement, entered
into by those who, under the statute of North Carolina, are
the heirs of the intestate in that State, of whom the plain-
tiff's wife is admitted to be one, to fix the share of the es-
tate which she should be allowed to take, and relinquish
"all of their claims *to* all the rest of the estate of the said
T. S. Myers to the heirs (of the heirs *sic*) of the second part."
A claim *against* an estate, and a claim *to* a share therein,
are two very different things. Even an heir at law may
have a valid claim *against* the estate of an intestate, and,
at the same time, he may have a valid claim *to* a share in
the estate of such an intestate; and the fact that, by agree-
ment amongst all the heirs of the intestate, his share is
fixed and determined, and he relinquishes all claim *to* the
rest of the estate, affords no evidence whatsoever that he
also relinquishes any claim which he may have *against* the

estate. The claim of a creditor *against* an estate rests upon a wholly distinct and different foundation from that of the claim of an heir at law *to* a share in such estate. A creditor of an estate cannot, with any sort of propriety, be said to have any claim whatever *to* any share in the estate; on the contrary, his claim is *against* the estate, and, if a valid claim, the estate cannot be divided, and the value of the shares of the heirs definitely ascertained, until such claim, along with all other claims against the estate, has been satisfied or provided for. There is not a word in this paper indicating, in the remotest degree, that the parties had any reference to any claim which the plaintiff had *against* the estate of Thomas S. Myers. Its language is as follows: "We, the heirs of Thomas S. Myers, deceased, of the second part, mutually agree and covenant to allow Joel M. Horne, and his wife, Sophia E. Horne, of the first part, one-fifth of the estate of the said Thomas S. Myers, deceased, both real and personal, *after showing up the contents of such estate;* and the said Joel M. Horne and Sophia E. Horne, of the first (part?) relinquished all of their claim to all the rest of the estate of the said T. S. Myers to the heirs (of the heirs *sic*) of the second part." The words which we have italicized in the foregoing quotation, manifestly signify, after the estate for division has been ascertained, which could only be done after all claims *against* the estate had been paid or provided for; in other words, that Horne and wife were to be allowed to take one-fifth of the estate which remained after the debts had been paid. This language, therefore, negatives the idea that the intention was to extinguish this claim of the plaintiff, which was nothing more than any other debt due by the intestate. Again, such an idea is negatived by the language, that Horne and wife "relinquished all of their claim," not claims, "to all the rest of the estate;" for there were two claims set up by Horne and his wife, one by Horne *as a creditor* of the estate, and the other by Mrs. Horne *as an heir* of the intestate, which claims were of a totally distinct and different

character.   It is true, that since the radical change effected
by our Constitution of 1868, in the law as to the property
rights of husband and wife, the husband would have no
legal interest in property inherited by his wife, and, there-
fore, the plaintiff could not, under the present law of this
State, be regarded as having any interest in property inhe-
rited by his wife from the intestate, Thomas S. Myers, and,
therefore, would not be a necessary party to an agreement
touching the same; but there is no evidence in this case
that any such change has been made in the law of North
Carolina; and, for all that we know, the husband there may
be a necessary party to such an agreement.   Again, it ap-
pears from the certificate of the clerk of the superior court
for Anson County, in the State of North Carolina, appended
to this paper, "Exhibit A," hereinabove copied, that it
was "filed in a special proceeding pending in said Court for
partition of the lands of Thomas S. Myers, deceased, among
his heirs at law;" and this affords another indication that
the object and purpose of that paper was to fix the terms
of *partition*.   In addition to all this, if it were true, as al-
leged in the answer (although there is no evidence to sustain
such allegation), that "Exhibit A" was executed because
of the exorbitant demands made by plaintiff on the heirs
at law of the said Thomas S. Myers, for services rendered
intestate during his lifetime, and, under threats of litiga-
tion, it seems to us utterly inconceivable that no mention
whatever, even by the remotest allusion, should have been
made in the paper to the claim of the plaintiff for services.
But, in the absence of any allegation or proof of fraud or
mistake, the true intent and purpose of the paper, "Exhibit
A," must be determined by its terms; and by those terms
we think it clear, beyond dispute, that such paper cannot
be regarded as a release or relinquishment of the claim of
the plaintiff, upon which this action is based.   Under this
view, it is manifest that all of the exceptions based upon
the construction and effect of that paper must fall to the
ground.   The fact that the plaintiff has received from the

administrator, under that agreement, the sum of $416, which he has, in his complaint, voluntarily offered to allow as a credit on his claim, cannot affect the question. It seems to us that the plaintiff might very well have insisted that this payment should go as a credit on the share of the estate allowed him and his wife as their portion of the estate; but he having chosen to allow this payment as a credit on his own claim, surely the defendant has no reason to complain.

But even if it were possible to consider that the intention of the parties in executing "Exhibit A" was to settle not only the claim of Mrs. Horne to her share of the estate of the intestate, but also to settle the claim of the plaintiff sued for in this action, we do not see how this third defense could be sustained. This is an action on an ordinary money demand brought against the administrator of an intestate, based upon an alleged contract made by plaintiff with the intestate in his lifetime. To such an action, the heirs at law are not, and would not be, either necessary or proper parties. The defense set up by the administrator is that this claim has been extinguished or relinquished by an agreement between the plaintiff and his wife, and the other heirs of the intestate, to which the administrator was not a party, and, therefore, in no way bound thereby. Again, it will be observed that this agreement is *executory*, and there is not only no evidence that is has been performed, but, on the contrary, the evidence shows that it never can be fully performed by the parties who are now claiming the benefit of it. One of its terms is, that Horne and wife are to be allowed one-fifth of the estate of said Myers, both real and personal, "after showing up the contents of such estate;" which words, as we have said above, after the estate for division has been ascertained; and it does not appear that this had yet been done. Furthermore, it is manifest from the undisputed testimony in the case, that all parties to the agreement acted upon the assumption that the lands in South Carolina, as well as the lands in North

Carolina, constituted a part of "the contents of the estate" (as they expressed it), for the only lands allotted to Horne and wife, in pursuance of the agreement, were lands in South Carolina, which, under our law, did not constitute any part of the estate for division among the heirs; but, on the contrary, were liable to escheat, and have, in fact, been escheated. Inasmuch, therefore, as the agreement relied on by the defendant as a bar to this action is not only executory in its terms, but has never been executed and never can be carried out in accordance with the manifest intention of the parties, it certainly cannot constitute any defense to this action. This is not a case for rescission of a contract, but the sole question here is whether the agreement set up by the defendant as a bar to this action can be so regarded; and for the reasons above indicated, we do not think it can be so regarded. While it may be that an agreement to which the administrator is not a party, and by which he is in no way bound, between the heirs of an intestate and a creditor of such intestate, for the settlement of his claim, would be a good defense to an action brought by such creditor against the administrator for the enforcement of such claim, if fully carried out according to the intention of the parties to such agreement, yet we cannot think that such an agreement, which has not been carried out and never can be, would constitute any defense to an action against the administrator upon such claim. Such a defense would not rest upon any contract or agreement between the creditor and the administrator—the only parties to this action—but could rest only upon the amount that the creditor has agreed to receive, and has actually received in satisfaction of his claim from other parties. The fact that the administrator has made a payment to the plaintiff of $416, under the agreement designated as "Exhibit A," cannot affect the question, for two reasons. In the first place, it does not appear whether this payment was made on account of the one-fifth of the estate allowed Horne and wife by the terms of the agreement, or on account of the claim

of the plaintiff upon which this action is based; for it must be remembered that we are now considering the case under the theory (which, however, as we have said above, we do not consider the correct theory,) that the agreement was intended as a settlement not only of the claims of Mrs. Horne as heir at law, but also of the plaintiff as a creditor of the estate. But a second and more conclusive reason is, that such payment operates as a satisfaction only *pro tanto* of the claim, and this has been allowed by the terms of the complaint. This being our view of the case, in both of the aspects in which it has been considered, we are of opinion that none of the defenses set up in the answer have been sustained; and inasmuch as we are bound to assume after verdict that the jury were satisfied that the contract between the plaintiff and the defendant's intestate was satisfactorily proved, and that the services rendered by plaintiff were reasonably worth the sum found by the verdict, after allowing the payment admitted in the complaint, the judgment must be sustained, unless there were errors of law in the conduct of the trial, resulting in such judgment.

The errors imputed may be divided into the following classes: 1st. In the rulings as to the admissibility of testimony. 2d. In refusing the motion for a nonsuit. 3d. In the charge and the refusals to charge.

The 38th exception complains of error in allowing Mrs. Horne to testify as to the value of the *joint* services of herself and husband rendered to intestate. The "Case" shows that this witness, after first testifying to the contract between her husband and the intestate, by which the latter employed the former to go and live with him and take care of him, goes on to state the nature and exceedingly disagreeable character of the services required by and rendered to the intestate, and that such services were performed by herself and husband, and by such other parties as plaintiff hired for the purpose. There is no pretense that the intestate made any contract with Mrs. Horne to render him any services, or with plaintiff

*and his wife.* On the contrary, the testimony shows that the contract was made with the plaintiff alone, and the nature of the services required of him rendered it absolutely necessary that he should employ the assistance of others; for he was not only to render *personal* services to the intestate, but was to look after and manage his business, which must have occupied a considerable portion of his time and attention; and the testimony shows that he did, in fact, employ the assistance of others. If, therefore, the plaintiff alone contracted to perform these services for intestate, he alone is entitled to compensation under the contract; and the fact that he employed others, his wife among the number, to assist him in rendering the required services, could not deprive him of the right to full compensation; the only effect would be to render the plaintiff liable to his employees for the value of their services, but would not render the intestate liable to such employees, with whom he has not contracted. This is aptly shown by the illustration used by the Circuit Judge: If A contracts with B to build a house for a specified sum of money, and B employs carpenters and laborers to assist him in building the house, it could not be contended with any show of reason that such employees would have any claim on A. They must look to B, with whom they contracted. This exception is overruled.

The 40th exception complains of error in allowing Mrs. Horne to testify as to the value of intestate's estate. This exception cannot be sustained, for the amount of intestate's estate was a pertinent inquiry, inasmuch as by the terms of the contract between the intestate and plaintiff the latter was not only to attend to the personal wants of intestate, but also to look after his business; and, of course, the amount of the estate which he was to manage was a proper element to be considered in estimating the value of his services. Besides, even if there was error, it was harmless, for Mrs. Horne testified in a very indefinite way as to the value of the estate, and there was other testimony, unobjected to, which was to the same effect.

So, also, exceptions 41 and 42, complaining of error in allowing Mrs. Horne to testify as to the reasons why she and her husband had disregarded the terms of the agreement with the other heirs—"Exhibit A"—are wholly immaterial, under the view which we have taken of the true construction and effect of that agreement.

Exceptions 43 and 44 to the testimony of Dr. B. C. Moore manifestly cannot be sustained. That witness was the physician who attended the intestate, visiting him as often as two or three times a day towards the last, and he was perhaps as well qualified to speak of the nature and character of the services rendered intestate and the value thereof as any one. This witness did not undertake to testify as to the value of the services rendered by Mrs. Horne separately, but he only spoke of the value of the services generally rendered by both husband and wife; and, as we have seen above, there was no error in this.

Exceptions 45 and 46 must be overruled. Surely the plaintiff had a right to prove what passed between the defendant and himself, as well as the suggestion made to him by defendant's counsel; especially when it appears that such testimony was brought out for the purpose of showing why plaintiff did not stand to the agreement upon which defendant relied in this action.

We are unable to find any basis in the "Case" for exception 47, for it nowhere appears that the Circuit Judge refused to allow the plaintiff to be cross-examined as to the property he had at the beginning of the year 1891. That exception is, therefore, overruled.

Exception 48, complaining of error in allowing the witnesses therein named to prove that Thomas S. Myers was an illegitimate, is so manifestly immaterial, that, but for our respect for counsel, we would be justified in characterizing it as frivolous. The whole case on both sides proceeded upon the theory that Myers was an illegitimate, and surely the reception of formal evidence to prove that fact cannot, in any sense, be regarded as error of law.

Exception 49, imputing error in ruling that it was incompetent for the witness, Ellison Mills, to testify what he offered to perform the services rendered by plaintiff for, and what he was willing to wait on Myers for, cannot be sustained. The intestate certainly had the right to choose whom he would employ, and he employed the plaintiff, and did not see fit to employ Mills; and, therefore, it was an immaterial inquiry what Mills offered, for his offer, if made, was not accepted; and, for all that appears, the intestate would not have been willing to employ Mills at any price. That witness was not, as the exception seems to imply, forbidden to say what the services rendered intestate were worth; for the "Case" shows that when asked that question there was no objection, and the witnesss answered: "I can't say."

Exceptions 50 and 51 impute error in allowing the plaintiff, when examined in reply, to testify what he had told several witnesses, who had been examined for the defense for the purpose of proving what he had told them as to the compensation which he was to receive for his services. This testimony was manifestly in reply, and was competent to explain what he had said to defendant's witnesses. These exceptions are overruled.

Our next inquiry is whether there was any error in refusing the motion for a nonsuit. The grounds upon which the motion for a nonsuit were based, and the exceptions to the refusal of such motion, rest upon the theory that the claim sued upon had been released by the terms of the agreement hereinbefore referred to as "Exhibit A;" and as we have shown above that such theory cannot be sustained, these exceptions are disposed of by what has already been said.

It only remains to consider the allegations of error in the charge and in the refusals to charge. The most of the exceptions to the charge and to the refusals to charge are based upon the same erroneous theory, and, therefore, require no further consideration. So, also, others of these exceptions;

for example, exceptions 15, 16, and 17—relating to the services of the wife—are taken under a misconception of the Judge's charge; for he did not tell the jury that the plaintiff could recover for the earnings of his wife; and what he did say to the jury upon that subject has already been considered and approved. Again, exceptions 9, 10, and 11 cannot be sustained, for the propositions of law therein stated were charged, and there was no error in saying to the jury, that the propositions of law as to the rescission of a contract were good law, but were not applicable to this case, for the obvious reason that this was not a case for the rescission of a contract.

Again, exceptions 19, 20, 21, 22, 25, and 26, complaining of error on the part of the Judge in not stating to the jury that certain matters therein referred to were in evidence, and leaving certain questions of fact to the jury, cannot be sustained. Under the present Constitution, the Circuit Judge is forbidden to say what is or what is not evidence, for that is a matter exclusively for the jury. What was the statute law of the State of North Carolina, was a question of fact, and, accordingly, testimony was properly admitted tending to show what was that law; and we do not find that the Circuit Judge was requested to construe either the law of North Carolina, if the jury believed it was what the testimony tended to show it was, nor was he asked to construe the written contract evidenced by the paper marked "Exhibit A." On the contrary, the exceptions as to these matters are all based upon the assumption that the true construction of the contract was what defendant claimed it to be, and that the law of North Carolina was what defendant contended for; and hence these requests were properly refused. It is clear that these exceptions are based upon the fact that the Circuit Judge carefully abstained from the violation of the constitutional provision by avoiding any statement whatever as to what were the facts in the case, leaving those matters exclusively to the jury—even leaving the question whether Myers was dead

to the jury—which constitutes the basis of the 26th exception. This might have been unnecessary, but it surely constitutes no error of law.

Exception 52 complains of error on the part of the Circuit Judge in charging the jury, "without further explanation," that the agreement evidenced by "Exhibit A" was a joint agreement, "in this, as between the parties of the first and second part to said agreement, the agreement was certainly several." Exactly what the words we have quoted from the exception mean, it is difficult to say. But whatever they may mean, we think it clear that the exception cannot be sustained for two reasons: 1st. It is manifest on its face that the agreement is joint; and, 2d. There was no request for any explanation, if, indeed, any was needed or was proper.

While we have not deemed it necessary to mention specifically each exception, we have carefully considered all of them, and are unable to find any that should be sustained.

There is, however, another question, outside of the exceptions, which has been raised in the argument here, which we will proceed to dispose of. That question, as stated in the argument of one of the counsel for appellant, is: "Can an ancillary administrator be sued in our Courts by a creditor of the domicil?" It is true, that the other counsel for appellant bases his argument as to this matter upon exceptions 5, 6, 7, 13, and 14, but these exceptions are all framed upon the assumption that the proper construction of the agreement evidenced by the paper marked "Exhibit A," is that the plaintiff thereby released or relinquished the claim sued upon in this action. But as we have held that such is not the correct construction of that agreement, these exceptions, for that reason, cannot be sustained. We are, therefore, left to consider the general question as presented in the argument of the senior counsel for appellant. In the first place, no such question has been raised by the pleadings, either by demurrer or answer, and no such question was presented to or considered by the Circuit Judge. Be-

sides, it may be doubted whether there was any proper proof that the defendant was the administrator of the domicil, while it is admitted by the pleadings that the defendant is the duly appointed administrator in this State. But waiving all this, it seems to us that there is an absence of testimony upon which the legal position taken by appellant can be sustained, if, indeed, it can be sustained at all. There is no evidence that the plaintiff was a creditor of the domicil of the intestate, which was in North Carolina; but, on the contrary, the testimony shows that the domicil of the plaintiff was in South Carolina when the contract upon which he sues was made, and that he only left his home for a temporary purpose, to wit: to carry out his contract with the intestate, and as soon as that purpose was accomplished he returned to his home in this State, where he now resides. It is true, that he remained at the house of intestate about a month after his death, but this was simply to take care of the property of intestate, at the request of the defendant, until it was sold. This did not effect any change in his domicil, any more than if he had gone to North Carolina to build a house for another and remained until that work was finished, and then returned to his home in South Carolina, which must be regarded as his domicil. We do not think that the position taken by counsel for appellant can be sustained.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.