8179

HURSEY v. SURLES.

1. ALLEGATION AND PROOF—QUANTUM MERUIT.—Under allegations that a deceased had contracted to compensate the plaintiff for services, proof that he had agreed to devise him a tract of land is not a fatal variance between the allegations and proof.

2. EVIDENCE—CONTRACTS.—In such case the contract to devise is admissible to show the agreement and the extent of recovery by plaintiff for its breach and of liability of the deceased, but such evidence might not be admissible in an action for specific performance.

3. CONTRACTS.—Whether deceased made a contract with plaintiff was a question for the jury, in the consideration of which they should consider not only the direct evidence, but the relationship of the parties, their business habits, and perhaps other circumstances.

4. IBID.—CHARGE.—There being evidence here on both sides as to whether the services alleged were rendered and accepted to be paid for on a business basis or as a favor in the ordinary give and take of persons connected by social and family ties, it was a charge on the facts to instruct the jury that if they find from the evidence the services were rendered and accepted by deceased, his estate was liable.

5. INTEREST.—SUCH ACCOUNT is not an interest-bearing demand.

Before DeVore, J., Dillon, Fall term, 1910.    Reversed.

Action by John A. Hursey against Allen Surles and D. H. Hyatt, executors of Archibald B. Surles. Defendants appeal.

*Messrs. Jas. W. Johnson* and *Livingston & Gibson,* for appellants. *Mr. Johnson* cites: *Contract to make a specific devise cannot be enforced on the law side of the Court:* 48 S. C. 90; 22 S. C. 467. *No contract shown:* 38 S. C. 179; 34 S. C. 255. *Services rendered may have been accepted as gratuitous:* 67 S. C. 244; 35 S. C. 551; 37 S. C. 161; 53 S. C. 382; 80 S. C. 160. *Such account should not bear interest:* 2 Bay 233; 30 S. C. 177; 1 T. Con. R. 21; 2 Bail. 173; 2 Hill 468.

*Messrs. Sellers & Moore,* contra. *Mr. Sellers* cites: *The action is based upon a quantum meruit:* 51 S. C. 53; Cyc. 9, 272. *There being no evidence that services were intended to be gratuitous, the relation of the parties and the nature of the services rendered being not such as to presume gratuity, there was no. question of gratitude to be submitted to the jury:* 34 S. C. 255; 38 S. C. 158; 37 S. C. 170; 53 S. C. 385; 67 S. C. 240. *Plaintiff entitled to bring action based on quantum meruit, although there had previously existed an express contract between testator and plaintiff, where contract had been broken, or repudiated by testator:* 4 L. R. A. 55; 1 S. C. 273; Cyc. 4, 329; 3 Brevard 238; 3 Hill 223. *Question not raised in Circuit Court can not be considered on appeal:* 64 S. C. 229; 64 S. C. 543; 76 S. C. 574; 73 S. C. 9; 70 S. C. 8; 73 S. C. 60; 72 S. C. 361; 74 S. C. 136; 44 S. C. 546; 51 S. C. 469; 68 S. C. 38; 74 S. C 306.

April 10, 1912. The opinion of the Court was delivered by

MR. JUSTICE WOODS. In this action of John H. Hursey against the executors of Archibald Surles to recover compensation for alleged services rendered to Surles in his lifetime, the plaintiff recovered judgment for $1,866.25. The more important questions made by the appeal depend on the Court's view of the scope of the issues made by the following material allegations of the pleadings. The complaint alleges: "That at the time of the death of the said Archibald B. Surles, the testator of the defendant, he was indebted to the plaintiff upon an account for services rendered by the plaintiff to and for the testator in his lifetime, extending over a period of a little over eleven years and six and a half months immediately preceding his death. That said services were of a business nature performed by the plaintiff at the instance and at the request of the defendants' testator in the conduct and management of his extensive business and

property interests in and around the town of Dillon, in said county and State. That said services consisted generally in making and drawing contracts with his tenants in said town, leasing his houses and lands therein, collecting and enforcing the collection of his rents therein, looking after the repairs on his houses and about the premises thereof, conducting his private correspondence, looking after the insurance of his buildings, collecting his rents on a part of his farm outside of said town, and doing and performing any and all acts and services in connection with his extensive interests in the town of Dillon, outside and apart from his mercantile business in said town, whenever called upon to do so by the said testator, at all times, and under all and varying circumstances, under a contract made by the plaintiff with the said testator that he would amply compensate the plaintiff therefor.

"That said services so rendered as aforesaid by the plaintiff for and on behalf of said testator for the time aforesaid, were and are reasonably worth the sum of six thousand nine hundred and thirty-five dollars, no part of which has been paid, although the plaintiff has demanded of the executors payment of the same."

The defendants meet this allegation by saying in their answer: "They deny emphatically all the other allegations of said complaint, and they allege that the said Archibald B. Surles was a man of rare business qualifications; that he gave his business his own personal attention; that he looked after all the details of his business; that he paid his debts promptly, and by judicious and close attention to business massed quite a fortune during his lifetime. That so far from the plaintiff rendering him assistance, the said Surles set the plaintiff up in business and contributed largely to his support for many years prior to his death, and made him a handsome devise in his will. That so far from the said Surles being indebted to said plaintiff at the time of his death, these defendants allege that if an accounting were

gone into between plaintiff and said A. B. Surles that said plaintiff would be largely in debt to the said Surles without taking into consideration the devise in question. They allege, further, that said A. B. Surles paid the plaintiff all demands he may have had against him during his, the said A. B. Surles', lifetime."

The plaintiff had first married the daughter of Surles, and upon her death had married a second time. There were two children of the first marriage who were living at the time of the death of their grandfather, the testator. The plaintiff and the testator lived on terms of intimacy in their social and business relations until the end of the testator's life. The plaintiff managed Surles' mercantile business in the town of Dillon, and for him collected rents, and from time to time attended to the repair of buildings. The lot on which plaintiff resided was devised to him by Surles on the condition, expressed in the will, that he should properly manage and keep up the stock of goods for the benefit of his children to whom it had been bequeathed.

In support of the specific allegations of the complaint evidence was introduced by the plaintiff tending to show that he performed the services set out in the complaint as the representative of Surles. As evidence that these services were not regarded by the parties as gratuitous, the wife of the plaintiff testified with respect to an interview between Surles and the plaintiff. "Well, now, tell in your own words how that conversation arose, who brought it about, and all about it? Well, Mr. Surles asked Mr. Hursey himself to lock up the store and come to dinner with him. He wanted to have a private conversation with us, and he brought up this subject himself. He told us he had decided to marry, and this marriage would cause him to have to make some changes in the business, and referred to the contract he had with Mr. Hursey about tending to his business on the outside. He says, 'You know I have given you a three-horse farm, and when I marry I will want to

change that, and give that to my wife,' and asked Mr. Hursey if he was willing for him to give him eighteen acres near town in place of that three-horse farm. He says, 'You know the house and lot you live in is for your work on the inside; now I ask your permission to change this for eighteen acres near town. What was that for? For the work of collecting rents, etc., on the outside of the store. Did you state, I believe you said that the contract that existed between them was referred to? Oh, yes, sir; he said he wanted to change the contract he had with him ever since Mr. Hursey commenced collecting rents and taking charge of his business."

The position taken by defendants' counsel in support of the motion for nonsuit was that the evidence was conclusive of a fatal variance between the allegations of the complaint and the proof, in that the averment of the complaint was that the testator had promised generally "that he would amply compensate the plaintiff" for his services, whereas the only evidence as to compensation tended to show a promise to devise a specific tract of land. Such proof, it was contended, might sustain an action for the specific property which the testator had agreed to devise, on the authority of *McKeegan* v. *O'Neall,* 22 S. C. 454; *Fogle* v. *St. Michael's Church,* 48 S. C. 90, 26 S. E. 99, but could not support an action of *quantum meruit* for the value of the services, resting on an alleged general promise of compensation.

Upon a contract for the sale of land or other property the purchaser may sue for the specific performance of the contract, or he may elect to regard the contract at an end and sue for damages for its breach. In such case if the suit is for the breach, the agreement is introduced, not for the purpose of requiring specific performance of it, but as evidence of the obligation assumed by the seller, and of the measure of benefit the purchaser would have derived from its performance. We see no reason why a contract to make a devise or a bequest should in this respect stand on a different

footing from other contracts. When the person who has agreed for valuable consideration to make the devise or bequest has breached the contract, the other party may elect to regard the contract at an end and sue for the loss or damage resulting from failure to make the devise. So, if the plaintiff had alleged in this case that he had performed valuable services for Surles, and that Surles had agreed to compensate him therefor by devising to him a certain tract of land, and that he had breached his contract, a case would be stated for the recovery of damages for the breach. If that had been the allegation, and the plaintiff had proved the services and their value, and the promise of compensation, but not the alleged specific promise to devise the land, this would not have been such a failure of proof as to be fatal to the action. The plaintiff could still recover for his services, but the recovery could not exceed the value of the land which he had alleged was to be devised.

The actual case before us is the converse of that just supposed. The plaintiff alleges services and a promise of ample compensation, but without specifying the manner of compensation. The evidence offered in support of the latter allegation tends to prove that the promise of compensation was the promise to devise a tract of land. This evidence does not defeat his action, but if accepted by the jury it limits his recovery to the value of the land. The testimony of the promise to make the devise is available to the plaintiff only as evidence that the services were to be paid for; but it is available to the defendant as evidence that the compensation was not to go beyond the value of the land. This principle was laid down and applied even under the strict common law rules of pleading in the case of *Barnes* v. *Gorman,* 9 Rich. 297. There the plaintiff declared on a written instrument as a promissory note, and also, in a separate account, in *indebitatus assumpsit* for the hire of a slave; it was held that although the plaintiff had failed altogether on his first count, as the instrument sued

on was not a promissory note, yet he might recover on the second count, using the written instrument as evidence of the hiring of the slave and the promise to pay the hire.

The case now under consideration does not fall under the rule often laid down that there cannot be a recovery on a *quantum meruit* on a complaint setting up an express contract. *Fitzsimmons* v. *Guanahani Co.,* 16 S. C. 192; *Birlant* v. *Cleckley,* 48 S. C. 289, 26 S. E. 600; *King* v. *Western U. Tel. Co.,* 84 S. C. 73, 65 S. E. 944. On the contrary, here the allegation is of a contract to compensate for services rendered, and the evidence tends to prove a contract to compensate for the services—the evidence not being at variance with the allegation but merely going beyond it, in that it tends to prove a contract to compensate in a particular manner, that is, by devising a tract of land. The motion for nonsuit was properly refused.

The question whether Surles made a contract to compensate the plaintiff was a question for the jury, in the consideration of which they had to consider, not only the direct evidence of plaintiff's wife, but the relation of the parties, their business habits, and perhaps a number of circumstances shown by the evidence.

The Circuit Judge, in the following instruction on this subject, charged the jury in effect that even if the express contract was not proved, yet if the services alleged were rendered, the verdict must be for the plaintiff, because the law would imply a contract to pay for the services: "So, if you conclude, from the evidence in this case, that the plaintiff rendered the service that it is alleged here in the complaint that he rendered, but you must conclude that based on the evidence; you cannot conclude that simply because it is alleged in the complaint; he must prove it,—if you conclude that he rendered the services, and this evidence satisfies you of the fact that he rendered them, and the party to whom he rendered those services accepted them and received them, why the law would imply a contract

on his part to pay for them." This was clearly a charge on the facts, in that it indicated to the jury that the relations of the parties gave no indication that the services were rendered gratuitously. The evidence was not so clear as to warrant the Judge in saying there was a presumption either that the services were intended to be gratuitous or that they were not; on the contrary, there was evidence on both sides of the question whether the relationship of the plaintiff with Surles was so close as to indicate that the services were rendered and accepted on a business basis as a favor in the ordinary give and take of persons connected by social and family ties. This issue was erroneously taken from the jury in the sentence of the charge just quoted. *Dash* v. *Inabinet,* 53 S. C. 382, 31 S. E. 297.

The account for services rendered was not an interest bearing demand, and the Circuit Judge erred in charging that interest was recoverable from the date of the death of Surles. *Schemorham* v. *Perman,* 2 Bail. 173; *Edwards* v. *Dargan,* 30 S. C. 177, 8 S. E. 858

The other exceptions are relatively unimportant, and relate to points not likely to arise on a second trial.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and the cause remanded for a new trial.

MR. JUSTICE FRASER *concurs in the result.*