15374

GANTT v. MORGAN

(18 S. E. (2d), 672)

Spring, 1941.

*Mr. F. Ehrlich Thomson,* of Columbia, for appellant,

*Mr. William M. Smoak* and *Mr. Marion H. Smoak,* both of Aiken, for respondent,

February 12, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

This is an action against the estate of Dr. A. Dan Morgan, late a resident of Aiken County, to recover the value of services rendered him during several years immediately preceding his death, which occurred on December 31, 1937. From a judgment in favor of the plaintiff the defendant appeals.

As in *Riddle v. George,* 181 S. C., 360, 187 S. E., 524, which is a similar case, the first contention of the appellant has to do with the alleged misconstruction of the complaint by the lower Court and the procedure followed during the course of the trial in allowing testimony to be introduced in support of the allegations of the complaint considered as an action on a *quantum meruit.* It is insisted that there is a fatal variance between the proof and the allegations of the complaint; that the complaint declares upon an express contract of employment, specific in its terms and definite as to the amount to be paid, while the proof if it establishes any right at all to recover, shows an implied promise to pay the reasonable value of the services rendered by the plaintiff. The appellant invokes the familiar rule that the recovery must be *allegata et probata*; that a party who bases his right of recovery upon the breach of an express contract cannot recover upon proof of the breach of an implied contract.

Generally, a plaintiff cannot in an action brought on an express or special contract recover or introduce evidence on an implied contract or *quantum meruit*. *Riddle v. George, supra; Howard & Foster Co. v. Citizens' National Bank,* 133 S. C., 202, 130 S. E., 758; *Hutson v. Stone,* 119 S. C., 259, 112 S. E., 39; *Birlant v. Cleckley,* 48 S. C., 298, 26 S. E., 600; *Hursey v. Surles,* 91 S. C., 284, 74 S. E., 618. But this principle is not applicable here, as we shall attempt to show.

The plaintiff alleges that on or about December 1, 1932, pursuant to a contract or agreement entered into between him and Dr. Morgan, he moved into the latter's home to nurse, provide for and take care of him for the remainder of his life; that Dr. Morgan, who was at the time helpless and indigent, promised and agreed to pay the plaintiff for such services. That the plaintiff with his family, consisting of his wife and grown son, in fulfillment of the agreement, moved into the home of Dr. Morgan, and rendered the services agreed upon, until his death. It is alleged that the deceased, during his lifetime, failed and neglected to pay the plaintiff; that the administrator of his estate, A. Dan Morgan, Jr., has failed and refused to pay him, and that the estate is now indebted to him in the sum of $792.50, for which plaintiff filed with the administrator, a verified claim covering a period of four years, four months and five days.

The defendant filed a general denial, and pleaded the affirmative defense of payment.

It is evident from the allegations of the complaint that the action is one on *quantum meruit*. A contract is alleged for the performance of certain services by the plaintiff, but there is no allegation as to any agreed amount which was to be paid. Plaintiff demanded judgment for $792.50, in accordance with the agreement entered into with Dr. Morgan that the latter "would pay for said services rendered for the purposes aforesaid." We think it clear that no specific amount of compensation was stipulated in the

agreement for the rendition of the services by the plaintiff, nor was any definite time fixed for payment to be made.

It is true that in actions to recover the value of services it is better that the complaint contain an allegation as to what is the reasonable worth or value of the services rendered. However, when the contract is silent as to the price to be paid, the law invokes the standard of reasonableness, and the fair value of the services is recoverable.

"When work is done under an express contract which does not fix the compensation therefor, the person performing the work without doubt is entitled to recover on a *quantum meruit* whatever the work is worth. The law allows a reasonable compensation, and permits the jury to take into consideration all the facts." 28 R. C. L., Section 32, page 695.

A like principle is announced in 71 C. J., § 44, p. 483.

In *Horne v. McRae,* 53 S. C., 51, 30 S. E., 701, 707, the plaintiff brought his action "to recover the value of services rendered by and through him to defendant's intestate for the period of nearly three years—from December, 1891 up to the time of his death in November, 1894—under an agreement with intestate, in which no particular price was stipulated for, but simply that he should be paid well for his services." The Court held that the action was based upon a *quantum meruit.*

In the complaint before us, as in *Riddle v. George, supra,* and in *Holliday v. Pegram,* 101 S. C., 378, 85 S. E., 908, 909, preliminary and incidental matters relating to the contract between the plaintiff and Dr. Morgan were set forth, but the pleading negatives any conclusion that the suit was based upon an express contract.

In *Holliday v. Pegram, supra,* it is said: "It frequently happens that some of the terms of an incomplete contract are agreed upon, for instance, all the terms of a contract of rental or sale, except the price. In such case, the action could

not be upon contract, because a complete contract was not made; but it would have to be on *quantum meruit*—a contract implied by the law—in which, however, it is proper to allege the terms of the contract so far as they were agreed upon."

The defendant upon trial was in no way misled with reference to the theory upon which this action was brought. No motion to make the complaint more definite and certain was made. The lower Court in construing the complaint prior to the reading of the pleadings, held that the plaintiff was entitled to introduce evidence showing what would be a reasonable amount for the services he rendered. Construing the complaint liberally, as we must, this can be denominated only as a suit on a *quantum meruit*.

It is urged that there was no evidence tending to prove the existence of the contract of employment, and no competent testimony to support the verdict of the jury.

The facts developed in Court amply supported the action of the jury. Dr. Morgan, who was 72 years of age at the time of his death, lived on his farm with an aged aunt. He was an old man, sick and impoverished. In addition to these afflictions he was practically helpless as the result of a spinal injury suffered in the first World War, which in the latter years of his life rendered it impossible for him to walk.

The plaintiff was a tenant upon the farm of Dr. Morgan, and lived in a tenant house about a quarter of a mile away, and the testimony shows that he was induced to move into the home of Dr. Morgan, with his family, and care for and provide for him upon the promise that he would be paid for his services. We might say in passing that the plaintiff was in no way related to Dr. Morgan, and was under no legal or moral obligation to take care of him. Throughout the years of his services he regularly paid rent to Dr. Morgan for the lands he planted, which enabled the latter to pay the taxes on his farm.

The testimony of Wilton Gantt, the son of the plaintiff, corroborated by disinterested witnesses, graphically describes the situation in the household, Dr. Morgan's needs, and how they were met by the plaintiff. He said (speaking of Dr. Morgan):

"Well, in many ways he was just like a baby. He couldn't control himself in any way at all. He (the plaintiff) had to bathe him just like a little small baby and at nights in the winter time we kept fire there night and day—all night and during the night we had to get up and go in and wait on him. He had a stick that he would knock on the floor—you could hear him, bump, bump, bump, calling for someone and daddy would have to get up and wait on him during all that time we were there.

\* \* \* \* \*

"At times we would have to pick him up and ride him around. I didn't have a car and we had a wagon and we would take him and tote him out to the wagon and take him around the place, when we wanted to look at some lines, corners or something and we had a chair in the wagon and he would sit in there and we would take him around to different places and sometimes we would carry him to Swansea to see the doctor. He was old and had his ideas and couldn't change him in any way.

\* \* \* \* \*

"Sometimes we would put him into it (a wheel chair) and roll him around in the house—different places and at times we would have to carry him upstairs to hunt a book. He had lots and lots of books and at times we had to take him and tote him upstairs to get the kind of book he wanted. We didn't know what he wanted—he was a doctor and we didn't know the kind of books he wanted and we would tote him upstairs."

In addition to what this testimony discloses, the plaintiff gave medicine to Dr. Morgan, and all in all performed the services of a practical nurse. Because of his helplessness, meals were served Dr. Morgan

separately in his room. About six months before his death, the plaintiff at his own expense hired an automobile and a driver, and conveyed Dr. Morgan to the Veterans Hospital in Columbia. Some time later, again at his own expense, he brought Dr. Morgan home from the hospital to spend two weeks, at the end of which time he again hired an automobile to return him to the hospital. More than one witness testified to the specific promise on the part of Dr. Morgan that he would pay the plaintiff for his services. The testimony fully supports the agreement entered into between the plaintiff and Dr. Morgan, and further shows overwhelmingly with what kindness, assiduity and competent care these services were rendered. The testimony likewise sustains the reasonable value of such services, which were based upon fifty cents per day. The defendant offered no proof to sustain his defense of payment.

The judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and MR. ACTING ASSOCIATE JUSTICE E. H. HENDERSON concur.