Eugene W. BLANTON; Landmark Enterprises, Inc., Plaintiffs-Appellees,

v.

Richard H. FRIEDBERG, Defendant-Appellant.

No. 86–1158.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1987.

Decided May 29, 1987.

Richard Steven Rosen (Susan C. Rosen, Rosen, Rosen & Hagood, Charleston, S.C., on brief), for defendant-appellant.

Thomas S. Tisdale, Jr. (Young, Clement, Rivers & Tisdale, Charleston, S.C., on brief), for plaintiffs-appellees.

Before HALL and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

K.K. HALL, Circuit Judge:

Defendant, Richard H. Friedberg, appeals a judgment entered on a jury verdict in favor of plaintiffs, Eugene W. Blanton and Landmark Enterprises, Inc. ("Landmark") in this diversity action, alleging

breach of contract and *quantum meruit* claims.[1] We affirm in part and reverse in part.

## I.

This case involves a dispute between the parties concerning the development of several tracts of real estate in South Carolina. Blanton, a South Carolina real estate broker, claims that he entered into an oral agreement with Friedberg during 1978 and 1979 to develop a parcel of land, known as the Liberty Hall Tract, situated in Berkeley County, South Carolina. According to plaintiffs' evidence, the contract provided that Blanton would represent Friedberg, who owned the tract, in connection with all activities necessary for the development and marketing of the land. Blanton testified that under the agreement he and Landmark, a company which he had organized, would receive either a 10% commission on all sales of property from the development, or the reasonable value of their services, plus expenses. Blanton also maintained that defendant agreed to pay him a 5% commission on the sale of any timber from the Liberty Hall property.

According to Blanton, from 1978 to 1981, he invested considerable time and money in the development of Liberty Hall, seeking to enhance the property's marketability. Blanton stated that although he had arranged for the sale of timber from the land in the amount of $417,905, he was not paid the 5% commission of $20,895.25. Blanton also stated that the Liberty Hall property was ultimately not developed due to a problem with the reservation of mineral rights.

Blanton further testified that in November, 1979, he had contacted Friedberg about another tract of land for sale in Mt. Pleasant, South Carolina, and that on June 1, 1980, Friedberg agreed to purchase the property, orally contracting with Blanton and Landmark to manage its development. According to Blanton, he and his company were to act as the property's sales agent and were also to obtain all zoning approv-als, sell portions of the land, manage and coordinate the design and construction of the roads, water, drainage, and sewage facilities, construct buildings on the tract for rental purposes, and arrange for the lease of developed commercial space to tenants who would ultimately occupy a shopping center located on the tract.

The shopping center was eventually developed into Patriots Plaza. Blanton and Landmark claimed that they had performed their part of the contractual agreement regarding this property, including obtaining a lease from the Kroger Company ("Kroger") and referring other prospective tenants to Friedberg. At one point in his testimony, Blanton conceded that he had received partial payment for his services in connection with the Mt. Pleasant property, which included one payment of $100,000 and a monthly payment of $5,000 for a ten-month period between September, 1980, and June, 1981.

In August 1981, Friedberg terminated his relationship with Landmark and Blanton. Plaintiffs maintained that they were discharged without reason or cause, and without being fully compensated for their services and expenses. Friedberg claimed that Blanton had been his employee from June, 1980, until August, 1981, at which time he was terminated for unsatisfactory performance. According to Friedberg, beginning in June, 1980, he had paid Blanton a monthly salary of $5,000, which was later increased to $6,000, for all services which Blanton performed on defendant's behalf up to the time of his termination. Defendant introduced into evidence Blanton's 1981 tax return and W–2 form, which listed him as an employee of Friedberg's company. Defendant's evidence further demonstrated that Blanton was given a leased automobile and that his car and other expenses, including office overhead, were fully paid. Friedberg denied the existence of any contract for commissions in connection with the real estate at issue, except for commissions on actual sales of property, contend-

---

**1.** The jury also returned a verdict for plaintiffs on defendant's counterclaim for breach of con-tract.

ing that when Blanton was terminated in August, 1981, he and Landmark claimed a balance due of only $21,937.67 and made no request for commissions or development fees.

Defendant maintained that he never agreed to pay plaintiffs any commission on any lease in the developed shopping center or at any other developed facility. It is uncontested that Blanton's services were terminated before Kroger ever occupied the Mt. Pleasant property. Furthermore, according to defendant, most of the development of that property was planned and took place after Blanton's termination in August, 1981, and the contractor who built much of the shopping center did not even know Blanton. Moreover, defendant maintained that at the time of Blanton's termination, improvements of only $600,000 had been completed on the property; no tenant had occupied it, and no acceptable leases had ever been produced by plaintiffs. Finally, according to evidence presented by Friedberg, subsequent to Blanton's termination, he had paid substantial commissions to another realtor each time a lease was consummated and plaintiffs did not notify this realtor, pursuant to industry custom, that they were entitled to or were claiming any of these commissions.

In July, 1983, Blanton and Landmark filed an action in state court for breach of contract, as well as fraud and deceit. This action was subsequently removed by defendant to federal court on the ground of diversity. Defendant denied the existence of a contract with plaintiffs and, following removal, plaintiffs were permitted to amend their complaint to assert an additional cause of action in *quantum meruit.*

Following a trial on the merits, the district court directed a verdict for defendant on plaintiffs' fraud claim and submitted the alternative contract and *quantum meruit* claims to the jury, which returned a verdict on behalf of Blanton and Landmark in the total amount of $438,580. The form of the

verdict discloses that the jury awarded Blanton $20,895 and Landmark $21,000 on their breach of contract action and that it awarded Blanton $394,525 and Landmark $2,160 on the action in *quantum meruit.*[2] Friedberg's post-trial motions for judgment notwithstanding the verdict ("JNOV"), an amended judgment, and a new trial, were denied and this appeal followed.

## II.

On appeal, Friedberg raises a number of issues. His principal contentions are that the trial court erred in admitting prejudicial and irrelevant evidence and in failing either to direct a verdict, grant JNOV, or grant a new trial with regard to plaintiffs' *quantum meruit* claim. Appellant also argues that the jury's verdict was unsupported by the evidence, excessive, the result of confusion, and contrary to the trial court's instructions. Friedberg further contends that plaintiffs' claim for a commission on the Kroger lease and for a development fee on the shopping center at Patriots Plaza are barred by South Carolina's statute of frauds. Finally, appellant asserts that plaintiffs cannot recover compensation for their services at Liberty Hall because any compensation was contingent upon a sale of the real estate which never took place.

We agree with appellant insofar as he argues that plaintiffs failed to produce sufficient evidence of services which they claim to have performed or of the reasonable value of those services to sustain the jury's verdict on their *quantum meruit* claim. We, therefore, conclude that the jury's *quantum meruit* verdict must be reversed and the case remanded for a new trial on that claim. We perceive no error with respect to the jury's verdict for plaintiffs on their contract action. Nor do we perceive any error concerning the jury's resolution of defendant's counterclaim. Given our disposition, we will address the remainder of Friedberg's contentions only

---

**2.** Normally, damages for breach of contract and recovery for *quantum meruit* are mutually exclusive remedies. In this instance, however, the jury found that Friedberg's promises to pay commissions on the sale of timber and real

estate were enforceable as separate contracts while Blanton's service as a development manager could only be addressed under *quantum meruit.*

insofar as they pertain to our holding that a new trial is required.

In previous cases, this Court has enunciated the principles of *quantum meruit* relief available to South Carolina litigants. In *United States v. Algernon Blair, Incorporated,* 479 F.2d 638, 641 (4th Cir.1973), we held that:

> The impact of quantum meruit is to allow a promisee to recover the value of services he gave to the defendant irrespective of whether he would have lost money on the contract and been unable to recover in a suit on the contract.

(citations omitted). Moreover, as we later pointed out in *W.F. Magann Corporation v. Diamond Manufacturing Company, Inc.,* 775 F.2d 1202, 1208 (4th Cir.1985):

> One who has rendered a service or supplied work, labor and materials under a contract with another, but who has been wrongfully discharged or otherwise prevented from so fully performing as to earn the agreed compensation, may regard the contract as terminated and get judgment for the reasonable value of all that the defendant has received in performance of the contract ...
>
> The underlying purpose of allowing *quantum meruit* recovery is two-fold, i.e. to prevent the breaching party from being unjustly enriched and to restore the aggrieved party in the contract to the position he occupied prior to entry into the contract. *Quantum meruit* merely seeks to return to the plaintiff the reasonable value of the services and goods provided to the defendant.

(citations omitted).

■ In *Blair,* a prime contractor had breached a contract but continued to receive the benefit of his subcontractor's services. *Magann* involved a breach of a sub-

contract by a prime contractor which justified a rescission of the subcontract. In both cases we held that the subcontractors were entitled to *quantum meruit* damages. In the instant case, plaintiffs sought to recover initially on the contract but then, after Friedberg denied the contract's existence, asserted an alternative cause of action in *quantum meruit.* Under these circumstances, we have no hesitation in finding that *quantum meruit* relief is likewise available.[3] The question in this appeal is not whether the remedy is available but whether the amount of the *quantum meruit* recovery is supported by the evidence. We conclude that it is not.

In order to prove his claim against Friedberg, Blanton offered into evidence records purporting to show 1,800 hours of time which he and others who worked for him expended in attempting to develop Liberty Hall. Blanton claimed that he was entitled to an agreed-upon consulting fee of $40.00 per hour for these services, amounting to a total of $72,000.

As for his services in connection with the Mt. Pleasant property, Blanton claimed $91,195.50. He arrived at this figure by subtracting a credit of $64,000 for consulting fees, which he claimed to have received, from $155,195.50, the latter figure representing 5% of the total development costs of $3,103,910. In addition, Blanton claimed entitlement to $267,525.48 for his services in connection with the Kroger lease. Blanton points out that, pursuant to his agreement with Friedberg, he was to have been paid 5% of the gross rent for the entire 20–year lease term and that his expert testimony indicated that this type of lease commission was generally paid up front or, at least, within the first year. Blanton

---

**3.** Friedberg argues that under South Carolina law a party may not recover in *quantum meruit,* where his action is brought on an express contract, unless a necessary provision of the contract is missing. *Gantt v. Morgan,* 199 S.C. 138, 18 S.E.2d 672 (1942). Neither *Gantt,* nor the other cases cited to us in support of this contention, however, are persuasive authority for the situation here, where a party to an alleged contract denies the very existence of the agreement. In such instances, there is a question for the

factfinder to resolve concerning whether a contract has been proved and, if not, whether a party who has performed services for the benefit of another is entitled to relief for the reasonable value of those services. Here, the jury, with two exceptions, resolved plaintiffs' contract claims against them and that finding is supported by sufficient evidence. The jury was then entitled to consider the *quantum meruit* claim.

submits that he obtained the lease with Kroger and that Kroger occupied the shopping center based upon his efforts. Therefore, according to Blanton, the full leasing commission was due even though the lease had not been signed prior to the termination of his services. Moreover, Blanton claimed payment at the rate of 75% of projected gross rents for contacting several other tenants, arranging for leases, and laying the groundwork for tenant occupancy.

Finally, Blanton relies upon the testimony of two expert witnesses, realtors Robert L. Selman and Emerson B. Read, as confirmation of the reasonable value of his services. Selman testified that a reasonable fee for the Mt. Pleasant property development, "may be anywhere from 3 to 5 per cent of the cost," the customary fee charged in the industry, and in line with what Blanton and Landmark were to have been paid under their alleged agreement. Concerning the salary issue, Selman also testified on cross-examination that he knew of "situations where a monthly or a periodic ... fee would be paid to a developer for his ongoing expertise and activity, and then upon completion some additional fee" would be paid. Read testified that in his opinion a reasonable leasing commission would be 6% of gross rents and a reasonable development fee would be between 5% and 10% of the project cost or gross rents.

Our review of the record convinces us that the evidence presented is insufficient to prove either the exact services performed by plaintiffs or the reasonable value of such services. *Blair* makes clear that:

> The measure of recovery for *quantum meruit* is the reasonable value of the performance ... and recovery is undiminished by any loss which would have been incurred by complete performance ... While the contract price may be evidence of reasonable value of the services, it does not measure the value of the performance or limit recovery. Rather, the standard for measuring the reasonable value of the services rendered is the amount for which such services could have been purchased from one in the plaintiff's position at the time and place the services were rendered.

479 F.2d at 641 (citations and footnotes omitted). Finding that a mere approximation of *quantum meruit* damages was insufficient, we remanded *Blair* to require the factfinder to accurately determine the reasonable value of labor and equipment use furnished to the contractor. Similarly, in *Magann*, holding that "profits per se have no place in a *quantum meruit* recovery," 775 F.2d at 1208, we remanded the matter to the district court for a precise finding of the reasonable value of services rendered to the contractor at the time those services were provided. We noted, however, that lost profits "may be considered to the extent that they may have a bearing upon assessing the reasonable value of the aggrieved party's performance." *Id.*

Applying these tenets to the case before us, we hold that plaintiff's anticipated consulting and leasing fees, based upon percentages of development costs and gross rents, cannot provide the sole or exclusive basis for proving their *quantum meruit* damages. In this case, Blanton and his company stopped far short of completing the two projects at issue. The mere fact that they would have received a certain fee, which might have been customary in the industry had they completed their work, does not control the measure of recovery for such services as they actually performed. If factors such as consulting and leasing fees, or percentages of development costs and gross rents, are to be considered at all, they may only be considered in the remanded proceedings after plaintiffs have demonstrated *with accuracy and precision* the number of hours devoted *actually* to rendering services to Friedberg. Moreover, plaintiffs must establish on remand that any compensation which they have already received, as evidenced by the $5,000-$6,000 monthly payments to Blanton during 1980 and 1981, was inadequate to cover the services for which they are now claiming reimbursement.

## III.

For the foregoing reasons, we affirm the judgment in favor of plaintiffs' contract

claims, in the amounts of $20,895 for Blanton and $21,000 for Landmark; we reverse the judgment in favor of plaintiffs' *quantum meruit* claims; and we remand the *quantum meruit* claims for a new trial consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.