15547

REDMOND v. STRANGE *ET AL.*

(26 S. E. (2d), 16)

October, 1942.

*Mr. Adam H. Moss, Mr. P. F. Haigler,* and *Mr. Henry R. Sims,* all of Orangeburg, Counsel for Appellants,

*Messrs. Zeigler & Brailsford,* of Orangeburg, Counsel for Respondent,

June 1, 1943.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous opinion of the Court:

Plaintiff was plant manager of defendants' large meat-packing establishment. He was employed by defendants for some years in Georgia before the latter purchased the Orangeburg Packing Company and began to operate it in the name under which they are sued. Plaintiff required and obtained a written contract of employment, prepared by his attorney, whereby he was paid a weekly salary plus "five per cent of the net profits of the business, which net profits are to be gross income less normal operating expenses * * *

audited by a certified public accountant on a semi-annual basis, at which time the five per cent will be paid."

This contract became effective April 1, 1938, and provided for two years, expiring March 31, 1940. Defendants' business operated on a fiscal year basis, November 1, to the following October 31, and dispute arose with respect to plaintiff's claim of five per cent. of the profits for the fiscal year ending October 31, 1940, although the written contract covered about half of it, as has been noted. In the early part of the last fiscal year involved plaintiff's copy of his employment contract was delivered to the defendants, the latter saying in testimony that such surrender resulted from a verbal agreement to do away with the written contract, but plaintiff contended that he only loaned his copy to his employers upon the latters' request.

Plaintiff left his employment on December 7, 1940, after which, upon his request of the bookkeeper over the telephone, he was mailed a check in the amount of $976.18, which was intended to be two per cent. of the profits for the fiscal year ending October 31 previously. After receipt and use of the check plaintiff wrote a letter to the defendants dated January 20, 1941, which is urged as strong evidence of an accord and satisfaction, a principal defense of the defendants and the only such involved in the appeal. The letter recited that "there were a few points apparently overlooked * * *," to wit, (1) no allowance of commissions from the end of the fiscal year to the date of the termination of the relation, (2) no interest allowed on the commissions for the last fiscal year and (3) no interest on 1939 commissions, which were first paid in part by note. The letter referred to them as "minor points" and requested adjustment and the mailing of a final statement. Defendants promptly replied, admitting liability only for interest in the amount of twenty-two cents upon 1939 commissions, which was remitted in postage stamps retained by plaintiff.

The check is an interesting document. It was mailed without letter or other accompanying explanation. It bore on the left of its face blank spaces for figures and other memoranda and above them the words: "By endorsement this check is accepted in full payment of the following account." These words are in such fine print that they escaped the attention of Court, counsel and jury (of the latter so far as is known) at the first trial and Judge Grimball, before whom the case was first tried, referred afterward to the necessity, in order to read them, of "eyes of microscopic power." Written by pen under this illegible notation was: "Bal. bonus due."

After verdict for plaintiff, defendants moved for a new trial which Judge Grimball granted by a rather comprehensive order in which he stated that the legal significance of the words last quoted was thoroughly argued, and that after the trial counsel deciphered the fine print which had not been previously called to the attention of the Court. Under the authority of the interesting old case of *Libenintz's Adm'r v. Greenland,* 2 McCord, 313, a new trial was granted. Pending such, however, it was discovered (from the photographic record of the bank) that the words on the check, "Bal. bonus due," were not on it when it was sent without explanation to plaintiff but were entered afterward, and after the bank had paid the check, by one of the defendants who explained in his testimony at the second trial that he did so upon discovery that the bookkeeper had not put that or similar notation upon the check, and he said he did so then for the purpose of his office records. Thus no contention was made in the second trial relating to the illegible printed notation on the check or the words penned under it after presentation and payment by the bank.

As stated, no statement was sent with the check or other notice that it must be accepted by plaintiff, if at all, in full settlement of the controversy. However, at the end of the last fiscal year, about two months before the sending of the

check, defendants' bookkeeper or office manager had given plaintiff what was called a "trial sheet," a memorandum of the business of the preceding year purporting to show calculation of four per cent. of the profits, half of which was the amount of the check. This memorandum was introduced in evidence and refers to the four per cent. commissions as "the bonus," and it may be fairly inferred from the testimony that was supposed to represent two per cent. of the profits for the plaintiff and the same amount for the office manager. Plaintiff testified that it was understood that these were not final figures and were prepared by the bookkeeper-office manager for discussion with him, and that he (plaintiff) did not accept the figures. It is noted from the exhibits that the profits for the year in question according to the memorandum were $58,137.43, whereas it appears that the profits for the same period later showed $72,146.23. The explanation of this large discrepancy is not found in the record.

Upon verdict for plaintiff again at the second trial and the refusal of the Court to set it aside, defendants appealed and urge the sole ground that the evidence established as a matter of law an accord and satisfaction between plaintiff and defendants, in other words, that the only reasonable inference of which the evidence is susceptible is that there was an accord and satisfaction by which the plaintiff was barred from bringing this suit, instituted during the month following the receipt by him of the check and postage stamps.

Careful consideration of the record and of the authorities cited by the able counsel for the appellants has not convinced us that there was error on the part of the trial Judge in refusing appellants' motions thereabout and submitting the issue of accord and satisfaction to the jury, just as had the prior Judge at the first trial of the case. The amount sued for was derived by calculation of the five per cent. specified in the contract upon the earnings of the business for the fiscal years ending in 1939 and 1940 shown by the audits

made by accountants employed by the appellants, and there is no doubt that there was more owing to respondent under the terms of the contract than was paid to him, and the jury found a smaller amount than that sued for. The one of appellants who testified said that at the end of the first fiscal year he and respondent orally agreed that the contract should be rescinded and ended, and that the respondent would thereafter not be entitled to five per cent. of the profits but only two per cent. unless he purchased an interest in the business by paying in three thousand dollars and thereafter applying his commissions on the purchase price until paid, and that the respondent had an option of so purchasing a share in the enterprise or accepting two per cent. commissions.

The testimony of the respective parties as to the time of the negotiations looking toward the replacement of the written contract by a new verbal one was in sharp conflict, plaintiff contending that it was first proposed at the end of the last fiscal year during which he was employed, and defendants that the conversations began about the first of that year. The written contract extended by its terms to about the middle of that fiscal year, as has been pointed out. Introduced in evidence was a brief note from plaintiff to Mr. Strange (the defendant in active management of the business) dated December 5, 1940, advising that he had exhausted possible sources, except the local banks, of a loan with which he could supply the cash payment required for the purchase of an interest in the business. This date was two days before termination of plaintiff's employment and over a month after the expiration of the last fiscal year involved in the litigation, and seems therefore to support the contention of plaintiff in this respect.

The evidence referred to, relating to the terms of employment, was contradictory and unquestionably made issues of fact for determination by the jury. The latter saw and heard the witnesses and found a verdict favorable to respondent which this Court has no right to

disturb. It may be similarly said with respect to the issue of accord and satisfaction. The jury has concluded against the appeallants and there was evidence reasonably sustaining them. There is no complaint of the Court's instructions and the charge is not in the record.

Reverting to the acceptance and use by respondent of the check mailed to him, it was undoubtedly evidence of intention to settle the disputed claim. But he testified that he intended to accept it in payment of the two per cent. admitted by defendants, with the adjustments requested by him and noted above, and that he had told appellants in a prior conversation with one of them that he would sue for the balance of his claimed commissions, three per cent., if they were not paid, and, in effect, that he understood the remittance to be for that portion (two per cent.) which appellants were willing to pay.

The evidence did not, in our view, establish beyond a reasonable contrary inference the certainty required as one of the elements of an accord and satisfaction, that is, certainty of the intent to settle the dispute. It is generally considered that an accord and satisfaction must contain the elements of contract; there must be a meeting of the minds. This despite the historical fact that the doctrine is older in the law than contracts. It was recognized as a valid means of settling tort liabilities before contracts were defined and enforced at law. Bouvier's Law Dictionary, Rawle's 3rd. Revision, 1914, Volume 1; page 103 *et seq.* The certainty referred to would possibly have been provided by the execution of a proper receipt or release fairly obtained, or the incorporation in the check of notice that it was tendered in full.

1 C. J. S., Accord and Satisfaction, § 1 *et seq.,* p. 460 *et seq.,* and 1 Am. Jur., 213 *et seq.,* contain excellent discussions of the general principles of the doctrine of accord and satisfaction. Applicable to the facts of this case is the follow-

ing from the first stated text, 1 C. J. S., Accord and Satisfaction, § 6, pp. 476-478:

"To constitute a valid accord and satisfaction, it is essential that what is agreed to be given or performed shall be offered as a satisfaction and extinction of the original claim or demand, that is, that the debtor shall intend it as a satisfaction and of such demand, and that such intention shall be made known to the creditor in some unmistakable manner, or that the offer be made in such wise or be accompanied by such acts and declarations as to amount to a condition that if the thing offered is accepted, it is accepted in satisfaction, and such that therefrom the creditor is bound to know or understand such intention and to recognize the existence of such attached condition; and it is equally essential that the creditor shall accept the thing given or agreed with the intention that it shall operate, in accordance with the debtor's intention, as a satisfaction. Both the giving and the acceptance in satisfaction are thus essential requisites, and if either be lacking there can be no accord and satisfaction.

"It follows that, for a transaction to constitute an accord and satisfaction, it must be intended by the parties to have that effect, and so it has sometimes been said that accord and satisfaction ordinarily involves purely a question of intention; at the least, intention is a controlling factor, and so must be clearly manifested, and is to be determined from all the circumstances attending the transaction."

And from 1 Am. Jur. 223-224, the following:

"In order that the acceptance of the check or remittance shall operate as a full discharge, the condition that it is to be accepted in full satisfaction of the pending claim or obligation must be expressly made or the circumstances must be such as to indicate clearly to the creditor that it is so sent.

"When the assent of the creditor is sought to be inferred from the acceptance of a less sum than that claimed to be due, the fact that such amount is offered in full discharge of the whole claim must have been communicated to the cred-

itor in some unmistakable manner. Consequently, where a check is tendered, even though it accompanies an account, if there is no expression of the condition that it must be accepted in full payment, the acceptance of the check does not constitute an accord and satisfaction, as no agreement to that effect can be implied from the transaction."

Appellants cite the decision of this Court in the case of *Strange v. Gulf Refining Co.,* 142 S. C., 102, 140 S. E., 307, in which the direction of a verdict for defendant upon a similar issue was approved. But the facts there were quite different. An itemized account was submitted with the voucher check in which the disputed items afterward claimed by plaintiff in his suit were set forth as debits against him and on the back of the voucher there appeared the following: "This voucher check is payment in full of the within account, and it is agreed that the payee's endorsement thereon shall constitute acknowledgment of such payment," below which the plaintiff endorsed his name and collected the check. It was contended that the facts should have been submitted to the jury, as was done in the case at bar, but this Court said: "These items having been brought into the statement, and the check accompanying the statement having given notice that it was intended as payment in full, and the appellant having endorsed it, is an acknowledgment that it was paying in full, settling all matters of dispute between the parties." See, also, *Carter v. American F. Growers, Inc.,* 136 S. C., 389, 134 S. E., 292.

There are lengthy annotations upon the subject of the acceptance of a check bearing or accompanied by notice that it was tendered in full settlement as constituting accord and satisfaction in 34 A. L. R., 1035 and 75 A. L. R., 905, and it is interesting to note that in many cases other facts have been found necessitating the submission of the issue to a jury in spite of such notation upon the check or accompanying voucher or account. Among the latter cases is ours of *Harper v. American R. Exp. Co.,* 139 S. C., 545, 138 S. E.,

354. The decisions last mentioned are not exactly in point here, being stronger for the defendants, but they illustrate the caution of the Courts in deciding the issue of accord and satisfaction (ordinarily, as here, a legal defense to an action at law) without refernce to the jury, the usual triers of the facts.

The check in the case at bar was sent by mail without any accompanying explanation or notice that it was tendered in full settlement of appellants' liability to respondent and no. such notice was embodied in the check at that time as has already been emphasized; and there is nothing in the record showing that such intention on the part of appellants had been brought home to respondent, necessary under all of the authorities to constitute an accord and satisfaction. Thus we conclude that the direction of verdict was properly refused as was the motion to set the verdict aside. Hence the exceptions are overruled.

Affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE, and CIRCUIT JUDGE J. HENRY JOHNSON, ACTING ASSOCIATE JUSTICE, concur.

MR. CHIEF JUSTICE BONHAM did not participate.