0301

FLORENCE CITY-COUNTY AIRPORT COMMISSION, Respondent, v. AIR TERMINAL PARKING COMPANY, a/k/a ATP of Florence, Appellant.

(322 S. E. (2d) 471)

Court of Appeals

338

*Willcox, Hardee, McLeod, Buyck & Baker, P.A.*, Florence, for appellant.

*McGowan, Keller, Eaton, Brodie & Elmore, P.A.*, Florence, for respondent.

Oct. 25, 1984.

CURETON, Judge:

This is a declaratory judgment action. Respondent, Florence City-County Airport Commission (Commission), brought action seeking a judicial determination that the appellant Air Terminal Company (Air Terminal) had defaulted in the terms of a lease agreement and that the lease should be cancelled. The trial court entered judgment for the Commission and Air Terminal appeals. We affirm.

The facts are undisputed. The Commission, the governing authority of the Florence City-County Airport, and Air Terminal entered into an agreement that permitted Air Terminal to operate the public parking facility at the Florence airport. The agreement contained a formula by which the parties established the fee Air Terminal would pay the Commission for the privilege of operating the parking facility.[1] Paragraph five of the agreement provided further:

> In the event of a partial suspension of activities by commercial airliners, causing a reduction in the number of enplaned passengers, then the monthly guaranteed

---

[1] The formula established an annual fee, but provided for payment of monthly installments.

fees shall be abated proportionately on a mutually agreeable and negotiated basis.

On March 22, 1982, Air Terminal wrote the Commission a letter advising that because a commercial airliner had suspended service to the airport and because there had been a thirty percent decrease in the number of "enplaned" passengers (comparing February 1980 statistics with February 1982 statistics), a thirty percent decrease in the rental would be in order.[2]

Several days later, Air Terminal tendered by mail a check in the reduced amount for the month of April. The Commission negotiated the check on April 7, 1982.

By letter of May 4, 1982, the Commission advised Air Terminal that paragraph five of the agreement did not give it the right to reduce payments. The Commission also advised that it was prepared to meet with Air Terminal to negotiate a reduction in the rental fees if one was in order.[3]

The circuit court found that there had been no decline in the number of enplaned passengers and that Air Terminal's unilateral reduction of rental fees constituted a default. It also ruled that Air Terminal's failure to cure the default resulted in a cancellation of the agreement.

The issues on appeal are (1) whether the trial judge erred in not finding that the parties agreed to reduce the monthly rental fees, and (2) whether the terms of the lease agreement permitted a default whether or not the monthly rental fees were paid.

With respect to the first issue, Air Terminal argues ■ that the March letter was an offer to continue the lease at the reduced rental rate, which when followed by the forwarding of the April rental check in the proposed reduced amount and the subsequent negotiation of the check by the

---

[2] The letter also stated: "Therefore we propose that the agreement be amended to the extent that the guaranteed rental shall be reduced by 30%. This reduction would be effective April 1, 1982."

[3] While not pertinent to this decision, we note that the May 1982 and subsequent reduced monthly rental payments were held by the Commission in escrow until the September 24, 1982, order of Judge Weatherford which permitted the Commission to utilize the reduced payments. Judge Weatherford's order also required Air Terminal to place in escrow with the clerk of court a sum representing the total amount that the monthly payments had been reduced.

Commission, amounted to an acceptance of its offer. We disagree. Plainly, the lease contemplated an adjustment in fees upon the reduction of the number of "enplaned passengers" at the airport. Nevertheless, such reduction would occur only on a negotiated or mutually agreeable basis.

A written contract may be modified by a subsequent agreement of the parties, *Mebane v. Taylor*, 164 S. C. 87, 162 S. E. 65 (1932), provided the subsequent agreement contains all the requisites of a valid contract. *Wheeling Downs Racing Association v. West Virginia Sportservice, Inc.*, 157 W. Va. 93, 199 S. E. (2d) 308 (1973); 17 Am. Jur. (2d) *Contracts* Section 465 (1964). One receiving an offer to change a contract to which he is a party is held to be under no obligation to respond to it, and his silence cannot be construed as an acceptance where nothing else is shown. *H. A. Sack Co. v. Forest Beach Public Service District*, 272 S. C. 235, 250 S. E. (2d) 340 (1978); *Raysor v. Berkley Co. Ry. & Lumber Co.*, 26 S. C. 610, 2 S. E. 119 (1887).

Air Terminal concedes that the parties never mutually agreed or negotiated a reduction in rental fees, but contends the acceptance of the check for less than the monthly lease fee amounted to an acceptance of Air Terminal's offer to modify the lease. Assent to an offer need not be expressed to constitute a contract, and may be inferred from acts and conduct. *Ex Parte Stevens, Stevens & Thomas P.A.*, 277 S. C. 150, 283 S. E. (2d) 444 (1981).

An implied agreement, like an express agreement, rests upon the assent of the parties to be bound to a particular undertaking. The parties must manifest their mutual assent to all essential terms of the contract in order for an enforceable obligation to exist. *Edens v. Laurel Hill Inc.*, 271 S. C. 360, 247 S. E. (2d) 434 (1978). If one of the parties has not agreed, then a prerequisite to formation of the contract is lacking. *Shealy v. Fowler*, 182 S. C. 81, 188 S. E. 499 (1936).

Ordinarily, acceptance of a check for less than the amount due does not indicate assent to the lesser sum in satisfaction of the full sum due, unless acceptance of the lesser sum is intended by both parties as the equivalent of an accord and satisfaction. *Redmond v. Strange*, 203 S. C. 35, 26 S. E. (2d) 16 (1943); *In Re McElmurray*, 47 F. Supp. 15 (D.S.C. 1942).

Even if we were to consider Air Terminal's March letter as an unconditional offer and not just an "offer to negotiate," there is nevertheless no evidence that the Commission intended its negotiation of the April check to constitute an accord and satisfaction. The Commission's director testified that when she received the March letter she turned it over to her consultant for a reply. Thereafter, when the bookkeeper received the April check she simply deposited it in the Commission's bank account. In *Redmond* it was said:

> To constitute a valid accord and satisfaction, it is essential that what is agreed to be given or performed shall be offered as a satisfaction and extinction of the original claim or demand, that is, that the debtor shall intend it as a satisfaction of such demand, and that such intention shall be made known to the creditor in some unmistakable manner, or that the offer be made in such wise or be accompanied by such acts and declarations as to amount to a condition that if the thing offered is accepted, it is accepted in satisfaction, and such that therefrom the creditor is bound to know or understand such intention and to recognize the existence of such attached condition; and it is equally essential that the creditor shall accept the thing given or agreed with the intention that it shall operate, in accordance with the debtor's intention, as a satisfaction. Both the giving and the acceptance in satisfaction are thus essential requisites, and if either be lacking there can be no accord and satisfaction. *Id.* 26 S. E. (2d) at 19.

We do not think the Commission's conduct evinces an intention by the Commission to accept the lesser rental in full satisfaction for the larger sum due.

Air Terminal next argues that the trial judge erred in declaring a default under the terms of the lease because: "Under paragraph nineteen[4] [of lease agreement] it is clearly

[4] Paragraph nineteen provides:

In the event of the default or unsatisfactory performance by Lessee under the terms of this agreement, and as set forth in the Parking and Traffic Proposal attached hereto as Exhibit B, Lessor shall give notice to Lessee of the alleged failure of performance, detailing the particulars thereof. Lessee shall have thirty (30) days to correct the said default and

indicated that in order to declare this agreement in default, there not only has to be a default in an unsatisfactory performance under the terms of the lease, but also under the terms as set forth in the Parking and Traffic Proposal (Exhibit B to the lease)."[5] Air Terminal then argues that because the Parking and Traffic Proposal was not placed into evidence, it was error for the trial court to find a default.

The purpose of all rules of contract construction is to ■■ ascertain the intention of the parties as gathered from the contents of the entire document and not from any particular provision thereof. *Thomas-McCain, Inc. v. Siter*, 268 S. C. 193, 232 S. E. (2d) 728 (1977); *Klutts Resort Realty, Inc. v. Down Round Development Corp.*, 268 S. C. 80, 232 S. E. (2d) 20 (1977). Considering the lease as a whole, it is manifest that the parties intended that a default could occur upon the failure of the lease agreement or *any term* of the lease agreement or *any term* of the Parking and Traffic Proposal which was incorporated into the lease. The interpretation urged by Air Terminal could lead to the absurd result that Air Terminal need not pay any rent as long as it did not violate the terms of the Parking and Traffic Proposal and the Commission would have been powerless to declare a default.

Accordingly, the order of the trial judge is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.

---

in the event it fails to do so, Lessor shall have the right to terminate this agreement, provided however, that Lessor agrees not to use this remedy in an arbitrary and capricious manner. In the event of the cancellation of this agreement because of default by Lessee, the title to all improvements and installations shall vest in Lessor.

[5] Appellant's Brief at page four.