41 F.3d 157
 APAC CAROLINA, INC., Plaintiff-Appellant,
v.
TOWN OF ALLENDALE, SOUTH CAROLINA; Town of Fairfax, South
Carolina; Welco Construction and Utilities
Company, Incorporated, Defendants-Appellees,
v.
CRS SIRRINE, INCORPORATED, Third Party Defendant.
APAC CAROLINA, INC., Plaintiff-Appellee,
v.
TOWN OF ALLENDALE, SOUTH CAROLINA; Town of Fairfax, South
Carolina, Defendants-Appellants,
and
Welco Construction and Utilities Company, Incorporated, Defendant,
v.
CRS SIRRINE, INCORPORATED, Third Party Defendant.
 Nos. 93-1825, 93-1892.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 11, 1994.
Decided Nov. 23, 1994.
 
 1
 ARGUED: Louie Franklin Elmore, Ogletree, Deakins, Nash, Smoak & Stewart, Greenville, SC, for appellant. William Rhett Eleazer, Columbia, SC, for appellee Welco Const.; Edwin Russell Jeter, Jr., McNair & Sanford, P.A., Columbia, SC, for appellees Allendale and Fairfax. ON BRIEF: Kimilia L. Wooten, Ogletree, Deakins, Nash, Smoak & Stewart, Greenville, SC, for appellant.
 
 
 2
 Before MURNAGHAN, Circuit Judge, SPROUSE, Senior Circuit Judge, and HARVEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 
 3
 Affirmed by published opinion. Senior Judge HARVEY wrote the opinion, in which Judge MURNAGHAN and Senior Judge SPROUSE joined.
 
 OPINION
 ALEXANDER HARVEY, II, Senior District Judge:
 
 4
 This litigation arises out of the construction of a sewage treatment facility for the towns of Allendale and Fairfax, South Carolina (collectively, the "Towns"). After construction of the facility had been completed, APAC Carolina, Inc. ("APAC"), the general contractor on the project, was sued in state court by Welco Construction and Utilities Company, Inc. ("Welco"), the primary subcontractor on the project. Welco alleged that APAC had breached an oral agreement to compensate Welco for additional work which had been authorized by APAC and which had been required as a result of numerous inaccuracies and defects in the plans and specifications for the project which had been provided to Welco by APAC. After it was sued by Welco, APAC filed suit in state court against the Towns and Welco, asserting claims for breach of contract and negligent misrepresentation. APAC's claims against the Towns were based upon the defective plans and specifications which the Towns had provided to APAC, and which APAC had in turn provided to Welco. APAC also asserted claims against Welco in the suit brought by it.
 
 
 5
 When Welco subsequently filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, the two pending state court actions were removed to the United States Bankruptcy Court for the District of South Carolina and were docketed as adversary proceedings in Welco's bankruptcy case. Thereafter, the United States District Court for the District of South Carolina withdrew reference of these adversary proceedings from the bankruptcy court, and the cases were docketed in the district court. In the first action, Welco sought to recover damages from APAC for, inter alia, breach of contract and breach of implied warranty. Welco Construction & Utilities Co. v. APAC Carolina, Inc., CA-90-1365 (hereinafter, "Welco v. APAC "). In the second action, APAC sought to recover damages from the Towns for breach of contract and negligent misrepresentation and against Welco for breach of contract. APAC Carolina, Inc. v. Towns of Allendale and Fairfax, South Carolina, et al., CA-90-1364 (hereinafter, "APAC v. Towns ").[1]
 
 
 6
 The two separate actions were consolidated, the parties were realigned, and the consolidated cases were tried together by the district court sitting without a jury. Following trial, the district court entered judgment, 868 F.Supp. 815, against APAC in the amount of $395,775, plus prejudgment interest, on Welco's claims asserted in Welco v. APAC. The court entered judgment in favor of the Towns on APAC's claims asserted in APAC v. Towns.
 
 
 7
 APAC now appeals from these judgments. The Towns in turn have cross-appealed from certain alternative conclusions of law which were entered by the district court in APAC v. Towns. Because we find no merit to any of the errors assigned by APAC, we affirm the judgments entered below.[2]
 
 
 8
 * In December of 1984, APAC entered into an agreement (the "prime contract") with the Towns, whereby APAC agreed to build for the Towns a sewage treatment facility for a total contract price of $1,044,912. In calculating its bid price for the project, APAC had specifically relied upon certain plans, drawings and specifications which had been provided to APAC by the Towns and which had been prepared for the Towns by the engineering firm of CRS Sirrine, Inc. ("Sirrine"). It is undisputed in this appeal that the plans and specifications ("the plans") which were produced by Sirrine were materially defective and inaccurate in a number of ways and that the project could not have been built as designed.
 
 
 9
 Under the prime contract, APAC was required to build the project in strict accordance with the plans and was not permitted to deviate from the plans without the prior written approval of the Towns and/or Sirrine. In the case of properly approved work changes, the prime contract provided that APAC would be entitled to additional compensation as follows:
 
 
 10
 Charges or credits for the work covered by the change shall be negotiated in accordance with Federal Register 40 CFR 33.1030(3). This procedure generally allows determination of charges or credits by one or more, or a combination of the following methods:
 
 
 11
 a. Unit bid prices previously approved.
 
 
 12
 b. An agreed lump sum.
 
 
 13
 c. The actual cost of [labor, materials, equipment, power, consumable supplies, insurance, and Social Security, old age, and unemployment contributions, plus] a fixed fee to be agreed upon but not to exceed fifteen percent (15%) of the estimated costs of the work. The fee shall be compensation to cover the cost of supervisions, overhead, bond, profit, subcontractors' profit and overhead, and any other general expenses.[3]
 
 
 14
 The prime contract also included provisions relating to the rights and duties of the parties with respect to final payment under the contract. Pursuant to these provisions, APAC and the Towns agreed that "[t]he acceptance by [APAC] of final payment shall be and shall operate as a release to [the Towns] of all claims and all liability to [APAC] for all things done or furnished in connection with this work." The prime contract further provided that APAC could accept final payment without forfeiting any outstanding claims for additional compensation if at the time of acceptance it executed an express reservation of rights as to those other claims.
 
 
 15
 In January of 1985, APAC entered into an agreement (the "subcontract") with Welco, whereby Welco agreed to provide all materials, labor, equipment and supplies for the project for a total subcontract price of $227,523. In calculating its bid price for the subcontracting work, Welco had obtained the plans and had relied upon their accuracy. Under the subcontract, Welco agreed to be bound by the terms and conditions of the prime contract, which was incorporated therein by reference.
 
 
 16
 In January of 1985, Welco began construction of the project's pipeline, which was to be installed at a uniform depth along a route which for the most part ran parallel to U.S. Highway 301. Welco almost immediately discovered that the actual ground profiles and elevations along the highway's shoulder varied significantly from the survey measurements represented in the plans. In addition, the plans failed to reveal several underground obstructions and failed to make any reference to certain applicable state regulations concerning the placement of manholes near or along highways. As a result of these and other problems, Welco not only had to excavate much more earth than had been anticipated, but also had to essentially re-survey the project in the field as the pipeline was being laid.
 
 
 17
 By March of 1985, the project had already fallen substantially behind schedule. On March 12, 1985, Sirrine, acting on behalf of the Towns, temporarily halted further construction because of unapproved deviations from the plans. Welco assured Sirrine that the changes had been necessary because the plans were defective. On March 18, 1985, a meeting was held with representatives of APAC, Welco and Sirrine in attendance, and an agreement was reached to proceed with the project. At the meeting, Sirrine authorized APAC and Welco to perform whatever additional work would be required to complete the project. At the same time, APAC authorized Welco to continue work on the project and agreed to compensate Welco for the additional work which would be required. APAC also agreed to submit to the Towns on behalf of Welco a change order for an equitable adjustment in the final price of the prime contract to account for the additional work. It was this equitable adjustment which the Towns later refused to accept and pay.
 
 
 18
 The project was completed in March of 1986. That month, Welco calculated the amount of additional labor, equipment and surveying costs which it had incurred as a result of the defective plans. Representatives from APAC participated in the calculation and verification of these figures. The total amount was $505,775.
 
 
 19
 By letter dated March 12, 1986, Welco formally submitted to APAC a request for additional compensation in the amount of $505,775. That letter outlined in detail all of the additional expenses which had been incurred by Welco as a result of the defective plans. Without objection, APAC accepted and adopted these figures and agreed to submit to the Towns a change order for an equitable adjustment in the amount of $505,775. However, for reasons which were never adequately explained, APAC did not submit to the Towns a formal request for an equitable adjustment until some fourteen months later. When APAC finally did submit such a request in May of 1987, the amount of the adjustment sought was the $505,775 sum which APAC had agreed to pay to Welco.
 
 
 20
 Within two weeks, the Towns rejected APAC's request, stating:
 
 
 21
 Specific justification will be required as to the reasons these matters were not brought up during the construction as required by the contract documents. Also justification will be required as to why an additional claim is being requested approximately two years after substantial completion of the project.
 
 
 22
 Over the course of the next year, the Towns and APAC engaged in protracted discussions regarding the claim for additional compensation. The Towns consistently and repeatedly rejected every claim by APAC for additional compensation.
 
 
 23
 By letter dated June 20, 1988, the Towns notified APAC in writing of their final denial of APAC's claim for additional compensation. After noting that the Towns had "looked at all aspects of the APAC claim for additional compensation," the letter concluded by stating that "[i]t appears that APAC is not entitled to further compensation for this Project."
 
 
 24
 On June 22, 1988, the Towns mailed four checks to APAC's office in Darlington, South Carolina. Throughout the project, the Towns had, at APAC's own request, mailed all checks to APAC's Darlington office. The total amount of the four checks was $55,607, representing the remaining balance due under the prime contract, including approved change orders. Three of the checks were marked "final payment" and one was marked "final pay estimate." Accompanying the four checks was a letter which stated that the enclosed checks "represent[ ] the final amount due from the Town[s] for [the project]."
 
 
 25
 The four checks were endorsed and deposited by APAC in a routine manner. No exception was taken by APAC at the time to the amounts paid by the Towns nor did APAC reserve any rights to receive additional compensation. For approximately seven months thereafter, APAC remained silent and took no further action concerning its claim for additional compensation. During this period of time, the federal agencies, which had provided the Towns with the bulk of the funding for the project, in November of 1988 closed out their accounts and their funding of the project.
 
 
 26
 In January of 1989, APAC mailed the Towns a draft demand for arbitration and threatened to file for arbitration if the Towns refused to pay some $600,000 in additional compensation. In May of 1989, Welco filed its suit against APAC in the Court of Common Pleas for Charleston County, South Carolina. Thirteen days later, APAC filed a formal demand seeking arbitration of its claims against the Towns. Thereafter, APAC sued the Towns in the Court of Common Pleas for Allendale County, South Carolina.
 
 
 27
 Subsequently, Welco filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, and the pending state court actions were removed to the United States Bankruptcy Court for the District of South Carolina. In May of 1990, the district court withdrew reference of these actions from the bankruptcy court and consolidated the cases for trial. The parties were realigned so that APAC was the party plaintiff in the consolidated action and the Towns and Welco were the parties defendant.
 
 
 28
 These consolidated cases were then tried before the district court, sitting without a jury, in two phases, the first of which took place from September 21-24, 1992. Due to scheduling conflicts, the second phase of the trial did not take place until March 25-26, 1993.
 
 
 29
 On June 7, 1993, the district court entered an Order setting forth detailed findings of fact and conclusions of law pursuant to Rule 52, F.R.Civ.P. The district judge found that APAC had "furnished Welco with the plans and specifications for construction of the project," that APAC had thereby impliedly warranted that the plans and specifications were accurate, reliable and suitable for construction of the project, and that APAC had breached this implied warranty because the plans were so inaccurate and defective that the project could not have been built as designed. The district judge further found that at the March 18, 1985 meeting the parties had orally modified both the prime contract between APAC and the Towns and the subcontract between APAC and Welco, and that APAC had breached the subcontract as orally modified by refusing to compensate Welco for the additional expenses which it had incurred as a result of the defective plans.
 
 
 30
 In calculating Welco's damages, the district judge did not distinguish between the alternative bases for APAC's liability (namely, breach of contract and breach of implied warranty), but merely found that Welco was entitled to the "fair value" of the additional work which it had performed in completing the project. After examining all of the evidence, the district judge determined that the $505,775 figure calculated by Welco and verified and adopted by APAC was the fair value of the additional work performed by Welco.[4] The district judge further determined that Welco was entitled to an award of prejudgment interest dating from March 12, 1986, which was the date when Welco had first formally demanded payment from APAC.
 
 
 31
 With respect to APAC's claims against the Towns, the district judge found that APAC's negotiation of the four checks marked "final payment", coupled with its failure to make any reservation of rights and its silence for the ensuing seven months, constituted an acceptance by APAC of final payment under the prime contract and a release and discharge of any claims against the Towns for additional compensation. Alternatively, the district judge found that APAC had by its inaction waived any claim to additional compensation.[5]
 
 
 32
 On June 9, 1993, the district judge entered final judgment against APAC both on Welco's claims against APAC asserted in Welco v. APAC and on APAC's claims against the Towns asserted in APAC v. Towns. APAC timely noted an appeal to this Court, and the Towns timely cross-appealed from the district court's alternative conclusions.
 
 II
 Welco v. APAC
 
 33
 We would first note the limited scope of APAC's appeal from the judgment entered by the district court in favor of Welco. APAC has not here challenged the district court's determination that APAC breached its oral agreement to compensate Welco for the additional work which was necessitated by the defective plans. Rather, the only arguments presented by APAC in appealing the judgment entered in favor of Welco are the following: (1) that the district court erred in concluding that APAC also breached an implied warranty as to the sufficiency of the plans; (2) that the district court erred in calculating Welco's damages on its breach of contract claim; and (3) that the district court erred in awarding Welco prejudgment interest.
 
 
 34
 APAC has in this appeal challenged several findings made by the district court. The standard of review as to this aspect of the appeal is whether the challenged finding is "clearly erroneous." Friend v. Leidinger, 588 F.2d 61, 64 (4th Cir.1978).
 
 
 35
 (a)
 
 Breach of Implied Warranty
 
 36
 Under the law of South Carolina,[6] "if a party furnishes specifications and plans for a contractor to follow in a construction job, he thereby impliedly warrants their sufficiency for the purpose in view." Hill v. Polar Pantries, 219 S.C. 263, 64 S.E.2d 885, 888 (1951); see also Hutson v. Cummins Carolinas, Inc., 280 S.C. 552, 314 S.E.2d 19 (App.1984). APAC's primary argument in this appeal is that the district court erred in applying the rationale of Polar Pantries to the facts of this case. APAC contends that because it neither participated in the actual preparation of the plans nor held itself out as being specially qualified in the field, e.g., as an architect or an engineer, it cannot, as a matter of South Carolina law, be held to have impliedly warranted the adequacy of the plans. According to APAC, under the law of South Carolina only Sirrine, and perhaps the Towns, could be held liable for breach of implied warranty on the facts of this case.
 
 
 37
 Although APAC has cited cases from other jurisdictions which provide some support for its position, see S & D Mechanical Contractors, Inc. v. Enting Water Conditioning Sys., Inc., 71 Ohio App.3d 228, 593 N.E.2d 354 (1991), no South Carolina authority suggests that a court of that State would agree with APAC's position if confronted with the specific facts of this case. The language and rationale of Polar Pantries are clear and are not subject to the limitations suggested by APAC. That APAC may not have held itself out as an architect or as an engineer does not negate APAC's implied warranty of the adequacy of the plans, particularly in light of the uncontradicted testimony presented at the trial that APAC had represented to Welco that the plans were documents that Welco "could build by."
 
 
 38
 Other South Carolina authority besides Polar Pantries lends support to Welco's claim that APAC breached an implied warranty as to the adequacy of the plans. In Robert E. Lee & Co. v. Commission of Public Works of Greenville, 250 S.C. 394, 158 S.E.2d 185 (1967), the South Carolina Supreme Court affirmed a jury verdict which had been rendered in favor of two contractors in their suit against the owner of the project seeking damages for, inter alia, breach of an implied warranty as to the adequacy of construction plans. The plaintiffs there had contracted with the defendant to install a pipeline on the defendant's property. The defendant had furnished the plaintiffs with plans which purported to reveal certain information relating to the subsurface materials and conditions along the pipeline route.
 
 
 39
 Following a second trial, the jury rendered a verdict in favor of plaintiffs on their breach of implied warranty claim. On appeal, the South Carolina Supreme Court affirmed and specifically upheld the trial judge's instruction to the jury that "failing to record upon the plans the water and subsoil conditions actually encountered constitutes a breach by the defendant of its implied warranty." Robert E. Lee, supra, 158 S.E.2d at 186.
 
 
 40
 Nowhere in the Robert E. Lee opinion did the Supreme Court of South Carolina suggest or imply that only engineers who actually prepared allegedly defective plans can be held to have impliedly warranted the adequacy of those plans. On the contrary, Robert E. Lee, as well as Polar Pantries, supports the district court's entry of judgment in favor of Welco on its claim against APAC for breach of implied warranty. Having provided Welco with plans which purported to reflect the actual ground profiles and elevations along the path of the project's pipeline and having indicated to Welco that the latter could rely upon and "could build by" the plans, APAC cannot later disclaim any implied warranty on the ground that it did not actually prepare the plans. It is a well-recognized principle of warranty law that "if a material state of facts is warranted to exist and it turns out not to be the case, the warrantor is liable even though he acted on misinformation or in good faith." Magill v. Gulf & Western Indus., Inc., 736 F.2d 976, 979 (4th Cir.1984).
 
 
 41
 In sum, the district court's interpretation of South Carolina law on the implied warranty issue was an entirely reasonable prediction as to what the Supreme Court of South Carolina would do if presented with the facts of this case. See Caspary v. Louisiana Land & Exploration Co., 707 F.2d 785, 793 (4th Cir.1983). We will therefore not disturb the judgment of the South Carolina district judge, who was better situated than this Court to determine the nuances of local law. See Caspary, 707 F.2d at 788 n. 5 ("In determining state law in diversity cases where there is no clear precedent, courts of appeal are disposed to accord substantial deference to the opinion of a federal district judge because of his familiarity with the state law which must be applied.").
 
 
 42
 APAC has also argued that the district court's finding that APAC "furnished" the Plans to Welco is clearly erroneous. There is no merit to this contention. There is ample evidence in the record to support the district judge's finding of fact in this respect.
 
 
 43
 Accordingly, we find no error in the district court's determination that APAC breached an implied warranty concerning the adequacy of the plans.(b)
 
 Welco's Damages
 
 44
 APAC next contends that the district court erred in calculating Welco's damages on its breach of contract claim. In his June 7, 1993 Order, the district judge expressly found that "[a]lthough APAC and Welco agreed that the latter would receive additional compensation, there was no agreement as to the amount of compensation Welco would receive for the extra work." The district judge then quoted from and relied upon decisions of the South Carolina Supreme Court which hold that when an express contract is silent as to price, the law will invoke the standard of reasonableness and permit recovery of the "fair value" of the additional work performed. Gantt v. Morgan, 199 S.C. 138, 18 S.E.2d 672 (1942); Braswell v. Heart of Spartanburg Motel, 251 S.C. 14, 159 S.E.2d 848 (1968).
 
 
 45
 As a general rule, "fair value" or quantum meruit damages are not appropriate when suit is brought on an express contract which contains a specific method for calculating the amount of compensation to be paid for additional work. However, contrary to APAC's contentions, the subcontract between APAC and Welco did not contain a mechanism for calculating the amount of compensation to be paid for additional work. Examination of the relevant language of the subcontract indicates that it does not describe a precise method for computing Welco's damages. Rather, the subcontract provided that the amount of compensation for additional work "shall be negotiated " by the parties using one or more, or a combination of the following methods: (1) previously approved bid prices; (2) an agreed lump sum; or (3) actual costs plus an agreed fixed fee not greater than 15% of actual costs. The subcontract thus envisioned that compensation for additional work would be determined only on a negotiated or agreeable basis.
 
 
 46
 Finding that there was no express agreement between the parties concerning the amount of compensation to be paid for the additional work, the district court determined damages on the basis of the figures negotiated between the parties. There is accordingly no merit to APAC's argument that the district judge erred in refusing or neglecting to calculate damages as provided for in the contract. This is not a case in which the parties had agreed upon a specific formula or equation for the calculation of the missing price of an express contract. Indeed, in light of the contract's specific requirement that additional compensation be negotiated between the parties, we conclude that the district judge acted reasonably in adopting as the fair value of the additional work performed by Welco the amount of the claim calculated by Welco and verified and adopted by APAC.
 
 
 47
 Accordingly, we find no error in the district judge's calculation of the amount of damages to be awarded to Welco on its breach of contract claim.
 
 
 48
 (c)
 
 Prejudgment Interest
 
 49
 There remains the issue whether Welco is entitled to an award of prejudgment interest. As a general rule, prejudgment interest is not appropriate when a plaintiff seeks to recover unliquidated damages. APAC contends that the recent decision of the South Carolina Supreme Court in Babb v. Rothrock, 426 S.E.2d 789 (S.C.1993), demonstrates that the district judge misapplied the law of South Carolina in awarding Welco prejudgment interest. In Babb, the South Carolina Supreme Court stated as follows:
 
 
 50
 The law allows prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, the payment is demandable, if the sum due is certain or capable of being reduced to certainty. The fact that the sum is disputed does not render the claim unliquidated for the purposes of an award of prejudgment interest. The proper test for determining whether prejudgment interest may be awarded is whether or not the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose. 47 C.J.S. Interest & Usury Sec. 49 at 124-25 (1982).
 
 
 51
 426 S.E.2d at 791 (other cits. omitted) (emphasis added).
 
 
 52
 APAC's reliance on Babb is misplaced. Indeed, if anything, that case demonstrates that the award of prejudgment interest here was not error. At least as of March 12, 1986, APAC was on notice of Welco's claim for additional compensation and even participated in and verified the calculation of the amount of that claim. APAC's argument would be more convincing if, within some reasonable period of time after receiving Welco's letter of March 12, 1986 demanding payment of $505,775, APAC had objected to or protested the amount of the claim. Instead, APAC adopted the figure advanced by Welco as a fair and accurate calculation of the value of the additional work performed by Welco. APAC even made a request to the Towns for an equitable adjustment to the prime contract in that very same amount. Whether or not, as now argued by APAC, it submitted the request for an equitable adjustment to the Towns for its own benefit and compensation rather than for that of Welco, APAC was on and after Welco's letter of March 12, 1986 fully aware of both Welco's demand for additional compensation and of the nature and precise amount of that demand. By submitting the same figure to the Towns, APAC adopted the amount claimed as reasonable compensation for the additional work.
 
 
 53
 Under the circumstances here, APAC's obligation to compensate Welco for the additional work was, at least as of March 12, 1986, sufficiently liquidated and undisputed to support an award of prejudgment interest from that date, even if APAC subsequently decided to dispute its liability for that amount.[7] Accordingly, we conclude that the district judge did not err in awarding Welco prejudgment interest.
 
 III
 
 54
 APAC also appeals from the judgment entered by the district court in favor of the Towns on APAC's claims for breach of contract and negligent misrepresentation. APAC contends that there was insufficient evidence to support the district judge's finding that APAC intended to accept, as final payment under the prime contract, the four checks sent to APAC by the Towns on June 22, 1988. APAC argues that its negotiation of the checks and its silence thereafter for some seven[8] months was, as a matter of South Carolina law, insufficient to manifest an intent to release the Towns from any claim made by APAC for additional compensation. On the record here, we disagree.
 
 
 55
 Under South Carolina law, the mere acceptance and negotiation of a check marked "final payment" does not, without more, release a debtor from the obligation to fully repay his creditor, "unless acceptance of the lesser sum is intended by both parties as the equivalent of an accord and satisfaction." Florence City-County Airport Comm'n v. Air Terminal Parking Co., 283 S.C. 337, 322 S.E.2d 471, 473 (App.1984). "Stated another way, an accord and satisfaction, like any other contract, requires a meeting of the minds. The debtor must intend and make unmistakably clear that the payment tendered fully satisfies the creditor's demand. Just as importantly, the creditor must accept payment with the intention that it shall operate as a satisfaction." Tremont Constr. Co., Inc. v. Dunlap, --- S.C. ----, 425 S.E.2d 792, 793 (App.1992).
 
 
 56
 The district court did not in this case hold that the mere acceptance and negotiation by APAC of the checks marked "final payment"[9] operated to release the Towns from any claims for additional compensation. Rather, the district judge determined that "APAC's conduct following acceptance of the final payment checks, specifically its complete silence for several months, unquestionably evidenced an intent to release all claims for additional compensation." (Emphasis added). On the record below, we cannot agree with APAC's contention that this was error.
 
 
 57
 APAC's reliance on Tremont is misplaced. The issue before the court in that case was whether negotiation of a check that bears the words "final payment" or similar phrases constitutes, as a matter of law, conclusive evidence of an accord and satisfaction. A quite different issue is presented here, namely whether negotiation of a check so marked followed by a lengthy period of inaction on the part of a creditor and other evidence of the creditor's interest is sufficient to release the debtor from any further claims.
 
 
 58
 As argued by APAC, mere silence alone would not necessarily constitute acceptance of a payment as a release of the debtor's obligation. However, prolonged silence and inaction by a creditor can reasonably be considered as evidence of an intent to accept the lesser amount received and to release the debtor from any further claims. In this case, other indicia, besides inaction, of an intent on APAC's part to accept the checks as final payment under the prime contract are sufficient to support the district judge's determinations. The payment was made in June of 1988, almost two and a half years after the completion of the project. The Towns had just rejected APAC's claim for additional compensation in the most definitive terms. APAC and its officers knew that the Towns had sent to APAC checks which were marked final payment and that the prime contract expressly provided that acceptance of final payment would act as a release of the Towns from any claims for additional compensation. Moreover, the checks were not only marked "final payment" on their faces, but were accompanied by a letter stating that they represented the final amount due under the prime contract. APAC endorsed and deposited the checks in a routine manner, without noting any objection or making any reservation of rights. APAC then sat idly by for seven months. During this entire period APAC never took a single step, even belatedly, to reserve its rights.
 
 
 59
 Under all these circumstances, it was not error for the district judge to find that APAC, by its silence and other conduct, intended to accept the amount received as final payment and forego any claims for additional compensation. We therefore conclude that the district court did not err in entering judgment in favor of the Towns on APAC's claims for breach of contract and negligent misrepresentation.
 
 
 60
 Since the judgment entered in favor of the Towns will be affirmed, we need not reach APAC's arguments concerning the district court's alternative conclusions concerning the damages sought by APAC from the Towns. Nor do we reach the arguments presented by the Towns in support of their cross-appeal.
 
 
 61
 AFFIRMED.
 
 
 
 [1]
 In APAC v. Towns, there were also asserted by the Towns a counterclaim against APAC and third-party claims against CRS Sirrine, Inc. ("Sirrine"), the engineering firm which had prepared the original plans and specifications for the project relied upon by the parties. During the course of the consolidated trial below, the district judge granted APAC's oral motion for judgment as a matter of law as to the Towns' counterclaim, and the Towns have not challenged that ruling here. With respect to the Towns' third-party claims against Sirrine, the record before us does not indicate whether the district court ever entered any final judgment or other order relating to or disposing of these third-party claims. In any event, Sirrine is not a party to these appeals, and none of the parties have argued or suggested that resolution of any of the issues raised in these appeals are dependent upon a determination of Sirrine's liability to the Towns
 
 
 [2]
 In light of this disposition, we need not reach the arguments raised by the Towns in their cross-appeal
 
 
 [3]
 This provision in the prime contract relating to compensation for additional work also provided that the "actual cost" method "is the least desirable method and should only be used when the extent of the work involved cannot be readily determined."
 
 
 [4]
 Because Welco conceded that it owed APAC some $110,000 which APAC had advanced to Welco to cover some of the additional expenses, the district judge deducted that amount from Welco's damages and arrived at a final damages figure of $395,775
 
 
 [5]
 The district judge also made certain "Alternative Conclusions of Law" relating to APAC's claims asserted in APAC v. Towns, in the event "a higher court were to disagree with" his findings that APAC had accepted final payment and/or had waived any claims for additional compensation. In these alternative conclusions of law, the district judge concluded that, in the absence of the defenses of final payment and waiver, the Towns would be liable to APAC for breach of implied warranty and for negligent misrepresentation in connection with the defective plans, and further determined that APAC's damages would be $101,792. The Towns have cross-appealed from the district judge's alternative conclusions of law pertaining to APAC's damages. In view of our disposition of the issues presented by APAC's appeal, we need not address the cross-appeal of the Towns
 
 
 [6]
 The parties agree that South Carolina law is controlling
 
 
 [7]
 As noted, APAC has not even challenged the district court's determination of APAC's liability for breach of contract
 
 
 [8]
 APAC contends that it was "silent" for only four months. The district judge, however, found that APAC took no action in relation to its claim for additional compensation for approximately seven months. The district judge's finding is not on the record here clearly erroneous
 
 
 [9]
 Although one of the checks was actually marked "final pay estimate," APAC has not argued on this appeal that it was in any way misled by this designation. Indeed, APAC's Executive Vice-President testified at trial that he understood the phrase "final pay estimate" to mean "final payment."